GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS

```
-------------------------x
IN THE MATTER OF:         :
                          :
PHILLIP LIVERPOOL         :
-------------------------x
```

Washington, D.C.

Friday, October 1 2004

The above-entitled matter came on for hearing, pursuant to notice.

BEFORE:

TERRY BANKS,              Hearing Officer

APPEARANCES:

On Behalf of the Student/Parent:

ROBERTA GAMBALE, ESQ.

On Behalf of the D.C. Public Schools:

JOHN HOPPE, ESQ.

This transcript was produced from an audio CD provided by D.C. Public Schools.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

T-1

C-O-N-T-E-N-T-S

OPENING STATEMENTS                          PAGE

   Counsel for the Parent                11

   Counsel for DCPS                      21

| WITNESS | DIR | CROSS | REDIR | RECR |
|---|---|---|---|---|
| Richard Rogers | 38 | 64 | | |
| Allen Williams | 77 | 85 | | |
| Samantha Toppen | 88 | | | |
| [First name] Brown | 100 | 103 | 117 | |

E-X-H-I-B-I-T-S

| DESCRIPTION | MARK | REC'D |
|---|---|---|
| Parties' Disclosure statements | | 9 |
| PETITIONER NO: | | |
| 1   Injury incident report | | 72 |
| 2   Discharge summary 2 pp | | 84 |
| 3   Letter to Rogers from Williams | | 84 |
| 4   Injury incident report 6/16/04 | | 27 |
| 5   Notice of Concern | | 84 |
| 6   Notice of Expulsion | | 85 |

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

P-R-O-C-E-E-D-I-N-G-S

HEARING OFFICER BANKS: Today is October the 1st, 2004.

This is an administrative hearing for Phillip Liverpool who was born in November 28th, 1991.

This hearing is being conducted in accordance with the guidelines and rights established by the Individuals with Disabilities Education Act, reauthorized as the IDEA Improvement Act of 1997.  The rules of the Board of Education for the District of Columbia and D.C. Code Title XXXVIII.

My name is Terry Banks.  As an independent hearing office I am not an employee of D.C. public schools.  I am not related to or an acquaintance of the student or parent.

I am prepared to hear both parties, and will act only on the evidence presented during the course of this hearing in accordance with applicable laws, rules and regulations.

The hearing is closed to the public.  The matters discussed here today

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C. 20005-3701      (202) 234-4433

T-3

are confidential and must be treated as such even after the hearing is completed.

The hearing is being tape recorded, and any party may request a copy of the tape or a written transcript of the proceedings by writing to the student hearing office.

At this time I would like for everyone to identify themselves for the record.

MS. GAMBALE: For the record I am Roberta Gambale. I am the attorney for the parent.

MS. SELMA (phonetic): Ms. Selma, the educational advocate.

MS. SMALL: Linda Small, the attorney adviser for DCPS, sitting in for the attorney-adviser assigned to the case, Jack Schreibman (phonetic).

MR. HOPPE: John Hoppe, attorney for Barbara Jordan Public Charter School.

MR. ROGERS (phonetic): Richard Rogers, principal, Barbara Jordan Public Charter School.

MS. TOPPEN: Samantha Ann Toppen

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-4

(phonetic),  special education coordinator,

Barbara Jordan Public Charter School.

       MR. WILLIAMS: Allan Williams.

       HEARING OFFICER BANKS: Good

afternoon.

       Ms. Gambale, do you waive reading

of the hearing rights?

       MS. GAMBALE: I would waive a

formal reading of the rights at this time.

       Okay, each party has submitted a

five-day disclosure statement.  Does any

party object to the introduction of any

other party's disclosure statement into

evidence?

       MS. SMALL: No objection from

DCPS.

       MS. GAMBALE: Just as a

preliminary manner, Your Honor –

       HEARING OFFICER BANKS: Was that a

yes or a no?

       MS. GAMBALE: No, we're not

objecting to the documents that are in

record.  But there was a supplemental

document that was submitted by the parent.

       HEARING OFFICER BANKS: By the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

T-5

parent?

MS. GAMBALE: Well, by us.

HEARING OFFICER BANKS: Okay, I
don't have that, and nobody objected to that
either?

MR. HOPPE: No.

HEARING OFFICER BANKS: Okay.
Everybody is in a good mood.  Mr. Hoppe,
yours is dated the 27th?

MR. HOPPE: Well, I did not
receive notice, nor did the school receive
notice fo these hearing.

When I received my first notice
of this hearing was in fact when Mr. Gambale
and Mr. Schreibman's five-day disclosures.

Upon doing so I hastily contacted
the officials at the school, Mr. Rogers and
the executive direction of the school to
attempt to put something together, and put
together this disclosure sheet.

There is an error on it.  I
identify the teacher as Cynthia Blackwell.
It's actually Samantha Chance (phonetic).

VOICE: Ms.  Blackwell is the
teacher.  She is not here.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-6**

MR. HOPPE: But I did not identify Ms. Thompson, who is here.

HEARING OFFICER BANKS: Okay.  I don't know what to tell you.  The hearing notice indicates that it was faxed to the school.  We'll see.

MS. SMALL: Well, DCPS doesn't object.

HEARING OFFICER BANKS: Okay. Well, all the disclosures will be admitted into evidence.

> (Whereupon the
> aforementioned
> documents were received
> into evidence)

HEARING OFFICER BANKS: Okay, Ms. Gambale, would you like to proceed?

MS. SMALL: DCPS has a preliminary matter.

HEARING OFFICER BANKS: And what would that be?

MS. SMALL: DCPS moves to be dismissed as a party in this matter.

While DCPS is a party pertaining to issues that were resolved at a hearing on

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-7

August 30th, 2004, I believe that the hearing
request for this proceeding today asserts
allegations that are solely against the
charter school, and it would be up to the
charter school's attorney to meet the burden
of proof in this case.

There is nothing that DCPS could
add.

HEARING OFFICER BANKS: Ms.
Gambale?

MS. GAMBALE: We are not seeking a
remedy from DCPS.  The only involvement that
they would have in the matter is that their
placement decisions that need to be made for
this child, and they would be implicated in
that.  But we're not faulting them for what
occurred, nor are we asking them –

HEARING OFFICER BANKS: Are you
alleging an inappropriate failure of DCPS to
place?

MS. GAMBALE: No.

HEARING OFFICER BANKS: You're
not?

MS. GAMBALE: Now what we're here
on is because of the discipline procedures,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-8

and the fact that the charter school
wouldn't let the child enroll this school
year.

HEARING OFFICER BANKS: Okay, is
D.C. in any way implicated in that?

MS. GAMBALE: No, they are not, so
we're not opposed.

HEARING OFFICER BANKS: Mr. Hoppe,
what do you see on D.C.'s motion?

MR. HOPPE: Well, I'm not aware of
any burden of proof we would have until of
course the student goes forward, but I have
no objection to the District of Columbia's
motion.

HEARING OFFICER BANKS: You do
not?

MR. HOPPE: I do not object.

HEARING OFFICER BANKS: Okay, Ms.
Small, I advise you to get out of here
before anyone changes their mind.

MS. SMALL: Thank you, sir.  Have
a good evening, everyone.

HEARING OFFICER BANKS: Okay, now,
Ms. Gambale, would you like to open?

MS. GAMBALE: Yes, I would.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-9

OPENING STATEMENT BY COUNSEL FOR THE PARENT

MS. GAMBALE: We're here today because Barbara Jordan Public Charter School failed to allow Phillip Liverpool to enroll for the 2004-2005 school year, and by doing this they unilaterally forced a change of placement, and they denied Phillip access to his education, and they denied him faith.

We feel that the charter school in this instance acted with complete disregard for the discipline procedures that are set forth in IDEA. We feel that the charter school in this situation acted with complete disregard for the welfare of this child, subjecting him to unnecessary change and given – especially given his history. He has a history of hospitalizations, and he has precarious emotional status. So this was not in his best interest to do this, especially in light of everything else that had gone on in the case.

The student's most recent IEP was drafted in September of 2003. It placed Phillip at Barbara Jordan Public Charter School, since the date of the five-day has

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-10**

expired, and there wasn't – so the hearing officer might want to take note of that – the parent confirmed with the charter school that Phillip would be attending the charter school during the summer of 2004.  The parent was never informed of their intent to deny Phillip enrollment.

The parent was not only contacted during the summer by telephone, but the parent attended the orientation before the school year started.

The school never gave notice to the parent of their intent to expel him or to not let him register.

And –

HEARING OFFICER BANKS: Is the parent going to testify?

MS. GAMBALE: The parent is available to testify, but all of this is established in the documents.  It's in the meeting notes, so you will have a chance to see this.

HEARING OFFICER BANKS: Okay.

MS. GAMBALE: And a lot of what I'm saying is not in dispute, at least the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-11**

facts here I don't believe –

       HEARING OFFICER BANKS: It sounded like parent's testimony, and I didn't see a parent.

       MS. GAMBALE: He's waiting by the phone.

       HEARING OFFICER BANKS: Okay.

       MS. GAMBALE: They never gave notice to the parent of the fact that they were going to expel him.  The parent didn't know anything about it until August 30th, the first day of school, he went with his son, Phillip, to enroll, and he was sent away. At that time he was told that they weren't going to allow him to register, and they were expelling him because of an incident that had  occurred during the prior school year.

       At the same time that they wouldn't let – well, that same day, DCPS and the charter school and the parent were at a hearing in which we all reached an agreement, because there were evaluations that the child needed, and in order to provide this program.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

**T-12**

So we all sat at a table here in front of a hearing officer, and we were all under the impression that he was attending the charter school. And we were never informed of the fact that they intended to exclude him from enrollment.

And There was also communication between our office and the school throughout the summer. We were retained in June, the end of June, and we communicated with the school. We sent out requests for records. We addressed the issues of evaluations. Ms. Moody had proposed that a meeting occur in August.

And none of these communications were we ever inform that they intended to refuse the child to enroll, and it wasn't until after they became aware that they never offered to schedule a manifestation meeting, they never did anything to let the parent know that this was occurring, so that something could be done over the summer in terms of identifying another placement for Phillip before the school year started.

As a result of all this Phillip

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

**T-13**

was excluded from classes for a period of two weeks. A meeting – there was a meeting that was held after we filed and prior to today's date, and that is what happened at that meeting is a concern as well because it's not in compliance with what the law requires.

And there was a meeting. After the meeting they officially expelled the student. And a meeting occurred on September 7th, and the expulsion occurred on September 8th, the official list, and they just never let him register when he went on the 30th.

As a result of all this there were 13 days that the child missed of school, and the child was forced to enroll in the neighborhood school, was given no other option in terms of placement because of the date – and because D.C. wasn't included and because – that was the only option that they had at the time.

They could have minimized – even if they didn't feel that they could serve the child's needs, they had the option of

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-14

minimizing the disruption for the child by
notifying everybody in advance and giving
everybody a chance to look for an alternate
setting for Phillip.

In terms of what occurred at the
meeting, at the meeting there was a dispute
between the parties.  Ms. Moody, the parent,
and the school psychologist all determined –
and this is all in the notes – but they all
determined that it was their opinion that
the instance was a manifestation.  The
school stated that it was not a
manifestation.  The whole team agreed that
the placement was not appropriate for the –
that they couldn't meet his needs there.

And so under IDEA, under 523,
they are required to find that it was a
manifestation, because the placement wasn't
appropriate.

Bottom line is that under the
Section 519 through 526 –

HEARING OFFICER BANKS: What is
that?

MS. GAMBALE: I'm sorry, the
sections in IDEA are 300, 519 through 526.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-15**

Under 519, this would constitute unilateral change of placement.

HEARING OFFICER BANKS: Well, what's the cite for the proposition that because they found it was an inappropriate placement, by definition it was a manifestation.  Do you have a cite for that?

MS. GAMBALE: Yes, I do.  That's in 523.

HEARING OFFICER BANKS: Okay, go ahead.

MS. GAMBALE: And then in terms of all the notices, 520 deals with the fact that they were required to meet and to review the behavior intervention plan for this student, and that's never been done.

They were also required to notify the parent not later than the date on which the decision to take action was made, and they didn't do that, and that's 523.

And they are supposed to immediately if possible hold the manifestation review.  And we have a situation where they waited until after the school year started, and again, we're very

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-16**

concerned about the disruption that this

caused for the student, and ti was

completely unnecessary.

And before they – on the 30th, as

soon as I was apprised of this, I did

contact the attorney, I did ask that they

allow him to remain in the school until we

could schedule the MDT (phonetic) so that a

team could make a decision regarding an

alternate placement for the student if they

didn't feel that they could meet his needs,

and they declined to do that.

They basically gave the child no

other option than to go to the school and at

this point the whole team agreed that he

needed a more restrictive setting, and a

full time setting.  So at this point he's

not in that type of setting, and nobody was

given a chance to find one.

HEARING OFFICER BANKS: And?

MS. GAMBALE: And, basically what

we are seeking for relief is, first of all,

the charter school needs to hold the

meeting, because they have the information

on the child at this point.  They have the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-17**

information on the behavior intervention plan. And they are the appropriate parties to revise that plan.

HEARING OFFICER BANKS: To hold what kind of meeting?

MS. GAMBALE: To hold a placement meeting for the student, and then they should also be required to provide the student with compensatory education for all the school that he has missed, and the time that he is back in an appropriate setting.

At this point we count that the child has missed 13 days, full days of school. In addition to that, the child is not in a setting that is meeting all of his needs.

HEARING OFFICER BANKS: Which is why you want a placement meeting. What do you want? You want a placement? You want comp ed? What else?

MS. GAMBALE: We want placement and comp ed; that's what we want.

HEARING OFFICER BANKS: Anything else?

MS. GAMBALE: No.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

**T-18**

HEARING OFFICER BANKS: Mr. Hoppe?

OPENING STATEMENT BY COUNSEL FOR DCPS

MR. HOPPE: Well, Your Honor, we're being charged here - the school is being charged with making an unnecessary change, disregard for procedure, and failure to comply with regulations.

The school would categorically deny each and every one of those, and would dispute the recitation of the facts as presented in many ways, both factually and procedurally if not ethically as well.

Basically what happened here is that the student was involved in an incident very late in the preceding school year, the '03-'04 school year, in which a firework was set off by the student, the student admitted setting off the firework inside the school building.

A notice fo concern was prepared, sent home with the student, and sent by regular mail to the parent.

There was contact over the telephone on numerous occasions between the dean of students at Barbara Jordan Public

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

Charter School and the parent concerning

this incident.  There was in fact notice,

written notice, sent both by the student and

through the mail to the parent setting up a

specific date on which a manifestation

hearing concerning the incident would occur.

That was set to occur on June 21st

of 2004.

HEARING OFFICER BANKS: Is that

documented here?

MR. HOPPE: That's among the

documents that I have in my five-day notice,

Notice of Concern dated June 16th, 2004.

HEARING OFFICER BANKS: What

document sets up a meeting for the 21st?

MR. HOPPE: It is the next to last

document in that, next to last page.

HEARING OFFICER BANKS: Okay, so

the notice of concern is the one you are

talking about?

MR. HOPPE: That's correct.

HEARING OFFICER BANKS: And that

says there will be a manifestation hearing

on June 21, 2004; right?

MR. HOPPE: That is correct.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-20**

HEARING OFFICER BANKS: Go ahead.

MR. HOPPE: The parents failed to appear at that hearing. There were contacts subsequent thereto, attempts to set up hearings on July 2nd, and I believe a number of other dates in July thereafter, set up as manifestation hearings.

The parent was well aware that the student was facing the sanctions, and was aware of specifically why. He was aware of the I think quite egregious nature of the behavior pattern that was exemplified by the student, and the reason why he was facing this manifestation hearing, the gravity of the charge.

This first notice was not on August 30th. He knew of the gravity of the charge at least as early as June, and was reminded of it several times in July.

The fact that a hearing was held to revise his program on the same day that school began I think is an insignificant fact. That may be the one thing that I would have to agree, that I was at that hearing. I had not been informed of this

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-21**

incident by the school, or the change in the

school's directorate between the '03-'04 and

the '04-05 school year, and the new school

officers had taken charge, and I had not

been informed by the outgoing executive

director that this incident had occurred.  I

was only aware of the 8/30 hearing here, and

of the nature of that hearing, that did not

deal with this incident in particular, and I

would not have been prepared to address this

incident at that hearing, since I had not

been informed by the outgoing executive

director of the incident leading to the

pupil's expulsion.

As I said, numerous documents

reflect that the parent was notified.  In

fact, the incident report, which would be

the third from the last document in the

documents that I submitted with my five-day

disclosure states specifically was the

parent notified?  Yes.  When?  Immediately.

HEARING OFFICER BANKS: Which

document is this?

MR. HOPPE: This is the third to

the last page of the documents that I –

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-22**

HEARING OFFICER BANKS: You need to mark your exhibits, counselor.

Okay, so this would be one, two, three, four?

MR. HOPPE: That's correct.

HEARING OFFICER BANKS: Date of 6/16?

MR. HOPPE: Yes.

HEARING OFFICER BANKS: Okay, so that's the injury incident report?

MR. HOPPE: Correct.  The parent was notified immediately.  The parent was able to be reached.

HEARING OFFICER BANKS: I'm going to call this Petitioner's Exhibit No. 4.

(Whereupon the
aforementioned document
was marked for
identification as
Petitioner's Exhibit
No. 4)

HEARING OFFICER BANKS: And you are saying that it indicates notice to parent?

MR. HOPPE: That is correct.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

**T-23**

HEARING OFFICER BANKS: Go ahead.

MR. HOPPE: It documents that he was notified on the 16th. I'm not aware of communications necessarily directly between Ms. Gambale's office and the school. There may well have been some.

HEARING OFFICER BANKS: Well, Ms. Gambale said she didn't assume representation until after this, right?

MS. GAMBALE: Right.

HEARING OFFICER BANKS: In August? September? When did you take over?

MS. GAMBALE: The date that we were – it was in June.

HEARING OFFICER BANKS: So you did –

MS. GAMBALE: It was at the end of June.

HEARING OFFICER BANKS: It was at the end of June? Okay, go ahead, Mr. Hoppe.

MR. HOPPE: Okay.

We also dispute the fact that the child was necessarily excluded from classes for two weeks. I don't believe that that is the amount of time between the – if one

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-24

includes the weekends and the Labor Day holiday, I don't think it adds up to two weeks or to 13 days of classes missed.  I believe that all action was taken in an expeditious manner, once we were able to hold a manifestation hearing at which the parent would attend, which was not until September 7th.

And at that hearing I believe it was the very day following that hearing a packet of materials was submitted to the home school of the student the very next day.

VOICE: Your Honor, may I just interject –

HEARING OFFICER BANKS: No, you can't.  Not until opening statement is finished.

MR. HOPPE: We can reflect that the school expeditiously sought to provide alternative placement to the student, within one day of the manifestation hearing, and that there was not (Inaudible) to receive at least education in some sort, and of course, for a further evaluation to achieve what Ms.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

**T-25**

Gambale refers to as education that meets his needs would have come as quickly as possible and as expeditiously as possible, but he could not be denied education.

And I don't know that there is anything to remediate, given that he had the opportunity for education virtually the day following his manifestation hearing.

If indeed he had missed days of school, I guess if we were to count them on the calendar, he would have missed –

HEARING OFFICER BANKS: I can do that, go ahead.

MR. HOPPE:  – eight at most.  I think given the gravity of the conduct we're talking about here, it is not an outrageous denial of education at all, and I don't believe whether or not it is a manifestation of the child's disability or not, I don't believe you can call this kind of disability an excuse for setting off fireworks within a school building at great danger to both the student and his classmates; that there are –

HEARING OFFICER BANKS: Mr. Hoppe, number one, you lapsed in closing argument

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-26**

now. All I want to know is the evidence you are going to put on.

I don't think I'm here, I don't think I'm here to adjudicate the expulsion. Maybe I'm wrong.

I think what I'm here to determine is whether or not there has been a violation of five years regulations with respect to manifestation, and if so, what Barbara Jordan did or should have done. But I don't think I have jurisdiction over the issue of expulsion.

MR. HOPPE: I understand that. What I'm talking about here is that the effect that it's been alleged to have had on the child; that the child was denied education because of this.

HEARING OFFICER BANKS: All I have to determine is whether or not you violated the regulations, and if so, what the appropriate remedy is.

Now what you said that I think is relevant here is, you took whatever measures you took from your standpoint, put it in the best light for you, you tried to put

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C. 20005-3701            (202) 234-4433

T-27

together the meeting on June 21st, you are
going to offer evidence that the parent
didn't make it to that meeting.

Now the meeting finally took
place on the first day of school.  Your
position is that that was expeditious in
light of the parent's inability to make the
previous meeting, and that holding a meeting
on the seventh – well, the manifestation
meeting took place on the first?

MR. HOPPE: No, the manifestation
meeting took place on the seventh.

HEARING OFFICER BANKS: On the
seventh?  What took place on the first?
Nothing?

MR. HOPPE: Not that I know of.

HEARING OFFICER BANKS: You said
the first day of school?

MS. GAMBALE: That was August 30th,
actually.

HEARING OFFICER BANKS: The first
day of school was August 30th.

MR. HOPPE: August 30th.

HEARING OFFICER BANKS: And the
only thing that happened then was, he was

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-28**

denied admission?

MS. GAMBALE: That's correct.

HEARING OFFICER BANKS: I thought
I heard you confirm that something else
happened.

MS. GAMBALE: We had a hearing on
August 30th as well.

HEARING OFFICER BANKS: Oh, the
hearing was at another proceeding.

MR. HOPPE: The hearing was in
another proceeding parallel to this and did
not deal with this.

HEARING OFFICER BANKS: Okay, so
that was another hearing.  So a meeting took
place on the 7th, and final action was taken
on the 8th?

MR. HOPPE: Correct.

HEARING OFFICER BANKS: And your
position is, that final action was taken on
the 8th.  There is no reason for him to have
missed more than eight or nine days?

MR. HOPPE: That's correct.  And
we believe that we complied with the
required procedures of IDEA up to that
point.  The fact that it is not the school's

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-29

fault that the manifestation hearing did not

occur on June 21st, as it was originally

planned, or on a number of other days that I

can provide evidence that there were

attempts to set that up during the summer.

The child need not have missed

any school, and the parent was well aware of

it.

HEARING OFFICER BANKS: What about

Ms. Gambale's argument that once the

determination was made by the MDT that

Barbara Jordan was not an appropriate school

by definition, the behavior became a

manifestation of the disability, number one;

and number two - well, deal with that one

first.

MR. HOPPE: Behavior is a

manifestation by definition simply because

the placement is inappropriate.

HEARING OFFICER BANKS: That's

what she says 523 says.  You are not

familiar with the provisions?

MR. HOPPE: I'm familiar with the

provision.  I don't believe it reads that

way precisely, or that it applies that way

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-30**

to this particular set of circumstances.

HEARING OFFICER BANKS: Okay, I'll take a look at it.

HEARING OFFICER BANKS: Okay, then I guess the next point is, what role - if your position is you are expelling the child, do you agree that it is Barbara Jordan's role to hold placement meetings? If not, who should?

MR. HOPPE: We believe that once he's expelled it is incumbent on DCPS to hold the placement hearing.

HEARING OFFICER BANKS: And why did you (Inaudible)?

MR. HOPPE: If that is a remedy they had sought, that's not about whether or not their responsibility - the allegations - there's a disconnect between the allegations and the remedy, and when I tried to address one of the remedies before, you told me -

HEARING OFFICER BANKS: I just wanted to see what you would say.

Okay, you have a witness?

MR. HOPPE: Yes, I do.

Well, don't they have to present

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-31

witnesses to present their case first?

HEARING OFFICER BANKS: No, under D.C. the LEA has a burden of proof, and the normal practice is for the LEA to put on proof disproving the allegations in the hearing request to satisfy D.C. LEA requirement that they meet their burden of proof.

HEARING OFFICER BANKS:  Actually I have the discretion of choosing.  But heretofore, before I came two years ago, it had been the consistent practice of hearing officers to have DCPS go first.

I think I am perfectly capable of allocating the burden appropriately by having petitioner go first, but this has been the practice so we'll just continue with it.

MR. HOPPE: Very well, Your Honor.

HEARING OFFICER BANKS: This is why in opening arguments I try to limit it to what people are going to say.  So if I think it would be necessary to have petitioner go first, I would do that.  But I think I have a pretty good feel for the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

T-32

theories of both sides here, so we'll just
stick with the common practice.

Who would you be calling?

MR. HOPPE: I would be calling Mr.
Richard Rogers.

Whereupon,

RICHARD ROGERS

was called as a witness by counsel for the
Petitioner and, after having been first duly
sworn, was examined and testified as
follows:

DIRECT EXAMINATION

BY MR. HOPPE:

Q    Mr. Rogers, what is your
employment?

A    Principal at Barbara Jordan
Public Charter School.

Q    And are you aware of the
enrollment of a student by the name of
Phillip Liverpool?

A    Yes, I am.

Q    And is Mr. Liverpool still
enrolled at Barbara Jordan Public Charter
School?

A    No.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-33

Q    When was Mr. Liverpool enrolled at Barbara Jordan Public Charter School?

A    He was enrolled at Barbara Jordan Public Charter School for school year 2003-2004.

Q    And did he encounter any disciplinary incidents during that time period at the school?

A    Yes.

Q    Can you describe anyone of those disciplinary incidents?

A    Well, outside of just normal disciplinary nothing out of the ordinary with some of the other students, there was an incident on June the 1st where Phillip had written – he had a morning journal assignment where he –

Q    (Whispering) Don't go into that one at all.  Don't go into that one.

A    Okay.  I mean there were other disciplinary.

Q    I mean what – did you feel that any of those incidents required a manifestation hearing?

A    No.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-34

Q    Did you feel that any of those incidents required notifying his parents?

A    Yes.

Q    Can you describe the incident which you felt required notification of his parents?

A    There had been an incident when he had been very disrespectful toward the teacher.

HEARING OFFICER BANKS: Let me see if I understand your response. I think you were asked whether or not there were disciplinary incidents during the year and you said yes.

Then you were asked whether or not - are you writing him a note, Mr. Rogers?

MS. GAMBALE: Excuse me, this is completely inappropriate. I object.

MR. ROGERS: I was taking notes on the hearing itself.

MS. GAMBALE: I absolutely object.

HEARING OFFICER BANKS: Then you were asked a question which Mr. Hoppe had you stop answering. And then he asked you a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-35**

question whether or not any of the incidents
that occurred required manifestation
hearings.

What is your answer to that?

THE WITNESS: My answer to that is
yes, the previous answer, yes.

HEARING OFFICER BANKS: Which
previous incident?

THE WITNESS: The fire cracker
incident.

HEARING OFFICER BANKS: Okay.
This is the first I've heard evidence of a
fire cracker incident.

So how many disciplinary
incidents occurred during the course of the
school year?

THE WITNESS: In which he needed
manifestation?

HEARING OFFICER BANKS: No, the
question was whether or not he had
disciplinary incidents during the course of
the year.  You said yes.

The last question before I
stopped you was whether or not any of these
incidents required manifestation hearings,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-36**

and you said no.

THE WITNESS: Well, yes, there was one.

HEARING OFFICER BANKS: Okay, how many incidents total were there, to the best of your recollection?

THE WITNESS: Two.

HEARING OFFICER BANKS: Oh, just two?  And of the two one required manifestation?

THE WITNESS: Correct.

HEARING OFFICER BANKS: And when was this one?

THE WITNESS: This one was June 16th.

HEARING OFFICER BANKS: Go ahead, Mr. Hoppe.

BY MR. HOPPE:

Q    What happened on June 16th, Mr. Rogers?

A    Well, I was in a conference in my charter school conference.  And Mr. Williams was the school designee at the time.  I can read his statement, or he's here too.

Q    Were you involved in any way with

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-37

the incident with any procedural matters,
any procedural efforts taken by the school
in the wake of that incident?

     A     Yes, I was.

     Q     When did you first become
informed of the nature of the incident?

     A     I became aware of the incident on
the day of the incident, June 16th.

     Q     Who informed you of that, Mr.
Williams?

     A     The dean of students at the time.

     Q     Did he inform you by telephone
call or in person?

     A     Telephone call.

     Q     Very well, when did you return to
the school?

     A     I returned to the school on June
the 21st.

     Q     And at that time were you aware
of any actions that had been taken by the
school between June 16th and June 21st?

     A     Yes.

     Q     What were you aware of, what
actions had been taken?

     A     The actions that had been taken

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C. 20005-3701     (202) 234-4433

T-38

were that the child had received a written
notices of concern from the dean of students
per my instruction notifying the parents
that we would have a manifestation hearing
on June the 21st, and to contact the parent
by telephone to make him aware of the
incident and confirming that we were sending
the letter.

    Q    The letter?  What do you refer to
when you say, the letter?

    A    The notice of concern.

    Q    Now you call this a letter.  To
your knowledge was this letter mailed to the
parent, or was this letter simply hand
carried to the parent?

    A    To my knowledge, it was both.

    Q    Both?  Very well.

    Now you say you returned to the
school on June 21st.

    HEARING OFFICER BANKS: You said
mailed and hand carried, was that the
question?

    THE WITNESS: Yes.

    HEARING OFFICER BANKS: Who hand
carried it?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

T-39

THE WITNESS: The student.

HEARING OFFICER BANKS: Go ahead, Mr. Hoppe.

BY MR. HOPPE:

Q    When you returned to the school on June 21st, was a manifestation hearing held for the student?

A    No, it was not.

Q    Why not?

A    The parent did not attend.

Q    Were you in attendance at what was planned to be the manifestation hearing?

A    Yes, I was.

Q    And in the wake of the parent's absence, to your knowledge, what occurred?

A    We could not make a determination.

Q    Very well.  Did you, or are you aware of the school, taking any action with regard to the parent's failure to attend the manifestation hearing on the 21st?

A    No.

Q    You're not aware that the school – did you have any contact with the parent subsequent to June 21st?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-40**

A    Not subsequent, no.

Q    Very well, when was your next contact with the parent or with the student?

A    My next contact with the parent was on August the 30th.

Q    Very well.  And what occurred on August the 30th?

A    The parent tried to enroll Phillip, and I told him that Phillip could not be enrolled because we had not had a manifestation determination.

Q    And how were you aware of the fact that there had not been a manifestation determination between the 21st of June and the 30th of August?

A    Because it's in the record that we had held one.

Q    Did you review the student's record on August 30th?

A    No.

Q    Did you review the student's record prior to August 30th?

A    Yes.

Q    When did you review the student's record?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-41

A    I cannot say for certain.  I know it was prior to August the 30th.

Q    And was this part of the normal course of preparation for a new school year?

A    Yes.

Q    And what did that record reflect?

A    That we could not make a determination on his status as a student at Barbara Jordan until we had a manifestation hearing.

Q    Did that record reflect attempts to hold a manifestation hearing?

A    Yes.

Q    And how many attempts to hold a manifestation hearing did that record reflect?

A    Three.

Q    And when were those attempts made?

A    Well, June 21st, July 12th and July 13th.

Q    And to your knowledge, does the record reflect that notice of each of those dates was given to the parent?

A    Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-42**

Q    Very well.

HEARING OFFICER BANKS: How was
notice given to the parent?

THE WITNESS: By mail.

HEARING OFFICER BANKS: Any phone
calls?

THE WITNESS: No phone calls.

BY MR. HOPPE:

Q    You say no phone calls, you mean
that you yourself did not make any phone
calls?

A    I did not.

HEARING OFFICER BANKS: We just
looked at the record.  I presume from his
answer, that his records do not reflect any
indication that phone calls were made on the
three days he gave to support the mail
notices that he's testified to; is that a
correct perception on my part?

THE WITNESS: That's correct.

HEARING OFFICER BANKS: That the
school does have any records to indicate
that phone calls were made on those three
dates?

THE WITNESS: On the first day,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C. 20005-3701         (202) 234-4433

**T-43**

yes, we do have records that a phone call
was made, on the 21sat.

        HEARING OFFICER BANKS: The 21st?

        THE WITNESS: That's correct.

        HEARING OFFICER BANKS: Now was
that – they set up a new meeting, or were
they going to inquire whether or not the
parent was going to come to that one?

        THE WITNESS: That was to indicate
that there would be a manifestation hearing
on the 21st.

        HEARING OFFICER BANKS: Okay.  But
as to the 12th and 13th of July, you did send
written notice but no oral phone –

        THE WITNESS: Correct.

        HEARING OFFICER BANKS: Go ahead,
Mr. Hoppe.

        BY MR. HOPPE:

    Q    Mr. Rogers, going back to the
30th, on the 30th you testified that the
parent attempted to enroll the student in
school for the '04-'05 school year.

        What action was taken in the wake
of the student's enrollment being denied on
that day?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

T-44

A    We attempted again to have a manifestation conference.

Q    Now you tell – did you make that attempt – when did you begin attempting to schedule that manifestation conference?

A    That was on August the 30th.

Q    August the 30th?  Did you have a manifestation conference on the 30th?

A    No.

Q    Why not?

A    Because we had not sent notice to the parties, at least – to have it on that particular day.

Q    Okay, when were you able to send notice?

A    Sent notice on 9/2, September 2nd.

Q    September 2nd?

A    And we mailed and faxed confirmation.

Q    And what date was scheduled in the notice that were mailed and faxed on September 2nd?

A    The 7th, September 7th, and two times on September 7th, and a time on September 8th.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

**T-45**

Q    So essentially was the parent or other interested parties being given a choice of what time and/or what date they wish to be there?

A    Yes.

Q    And did anyone respond to that choice?

A    Yes.

Q    Who responded?

A    Ms. Rudy (phonetic).

Q    Ms. Rudy responded with a choice of time?

A    Uh-huh.

Q    And was that hearing later confirmed to be held at that time?

A    Yes.

Q    Was that hearing held?

A    Yes.

Q    What date and time was that hearing held?

A    September 7th at 2:00 p.m.

Q    Very well.

At that hearing were you in attendance?

A    Yes, I was.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-46**

Q    And what can you tell me about what happened at that hearing?

A    Well, I can tell you that we reviewed the nature of the incident which we were having the manifestation hearing for. We asked if there was a review of Phillip's behavior intervention plan. There was a review of the - there was consultation with the school psychologist in reference to the incident, and whether it was a manifestation. Then we had some dialogue as to where we needed to go next, if it was determined that Phillip would be expelled.

Q    Very well. What was the determination at that hearing, the final determination as to the incident?

A    The determination was that the school psychologist believed that it was a manifestation of his disability. However, there was some dissent in that with members of the team.

Q    Very well. And what action was determined to be taken at this hearing with regard to this incident?

A    At that time it was recommended

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-47

with – asked of me how I would proceed with
the school discipline policy, and that he
would be expelled.  However, DCPS would
conduct a psychiatric evaluation within 10
days.

     Q    And did you have at that time any
indication that DCPS would conduct that
evaluation?  Or was that simply something
that you desired to have done?

     A    We sent a confirmation of that to
Dwight Comet (phonetic) on 9/8/04.

     Q    And did Mr. Comet respond after
you faxed that evaluation –

     (Tape change)

     A    No.

     HEARING OFFICER BANKS: Let me
stop you, make sure I understand.  Was Mr.
Thomas at the meeting?

     THE WITNESS: No.

     HEARING OFFICER BANKS: Was a
representative of DCPS at the meeting?

     THE WITNESS: No.

     HEARING OFFICER BANKS: So when
you say the action was that petitioner would
be expelled but that DC would conduct this

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C.  20005-3701     (202) 234-4433

T-48

evaluation, that was without any input from DC, is that right?

THE WITNESS:  That was actually a recommendation that was discussed with Ms. Moody at the conference.

HEARING OFFICER BANKS: Okay, so the MDT in the absence of DC indicated they would like for DC to do the evaluation?

THE WITNESS: Yes.

HEARING OFFICER BANKS: But DC wasn't there?

THE WITNESS: Correct.

HEARING OFFICER BANKS: So are you saying it was the MDTs determination that he be expelled, or was that your determination?

THE WITNESS: It was my determination as part of the MDT.

HEARING OFFICER BANKS: Now wait a minute.  I want a straight answer here. First of all he asked you what the final determination was, and you said the psychologist said it was a manifestation but there was dissent.

THE WITNESS: Correct.

HEARING OFFICER BANKS: So what I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-49

want to know, what was the consensus of the

MDT?  And who was supportive and who was

not?

THE WITNESS: The consensus of the

team that hazardous materials constituted an

explosion according to school policy.

HEARING OFFICER BANKS: That's not

what I asked you.  What I asked you was

whether or not the MDT reached a consensus

as to whether or not the behavior was a

manifestation of a disability.  You said the

psychologist said that it was.

THE WITNESS: Right.

HEARING OFFICER BANKS: Who

disagreed with the psychologist?

THE WITNESS: Ms. Moody.

HEARING OFFICER BANKS: Ms. Moody

disagreed with the psychiatrist?

THE WITNESS: I'm sorry, repeat

your question, I'm sorry.

HEARING OFFICER BANKS: I'm trying

to get clarification of your response to Mr.

Hoppe's question.

Mr. Hoppe asked what was the

final determination of the manifestation

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-50

hearing.  The manifestation hearing is called to determine whether or not a student's behavior is a manifestation of his disability.

Your response to Mr. Hoppe's question was that the psychiatrist said it was a manifestation.  You then said there was dissent.

You then moved to discipline. What I missed was, other than the psychologist, where the other members of the team came down on the issue of manifestation.

THE WITNESS: The team concluded that the behavior was not a manifestation of the disability.

HEARING OFFICER BANKS: Okay, who disagreed with the psychologist?

THE WITNESS: The educational advocate, which was Ms. Moody, said the behavior was a manifestation of his disability.

HEARING OFFICER BANKS: Go ahead.

THE WITNESS: However, all members except the parents feel that a more

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-51

restrictive educational environment is
necessary due to the escalating nature of
his emotional disability.

        HEARING OFFICER BANKS: Say that
again.

        THE WITNESS: The educational
advocate stated that the behavior was a
manifestation of Phillip's disability –

        HEARING OFFICER BANKS: Wait a
minute, let me stop you.  Were you at the
meeting?

        THE WITNESS: Yes, sir, I was.

        HEARING OFFICER BANKS: This was a
couple of weeks ago.  Look at me when you
answer.  Who was at the meeting?

        THE WITNESS: I was at the
meeting.

        HEARING OFFICER BANKS: Who was at
the meeting?

        THE WITNESS: I was at the
meeting.

        HEARING OFFICER BANKS: Who else
was at the meeting?

        THE WITNESS: Ms. Moody was at the
meeting.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-52

HEARING OFFICER BANKS: Okay, who else?

THE WITNESS: Ms. Moody was at the meeting.  Mr. Hoppe was at the meeting.

HEARING OFFICER BANKS: Okay.

THE WITNESS: My deputy director was at the meeting.  The parent was at the meeting.

HEARING OFFICER BANKS: So we've got five or six people from the school.

THE WITNESS: Yes.

HEARING OFFICER BANKS: We've got a psychologist.  We've got the advocate.  We've got the parent.

Okay, so you've got a psychologist who says it was a manifestation.

THE WITNESS: Right.

HEARING OFFICER BANKS: And everybody else in the school says it wasn't?

THE WITNESS: Right.

HEARING OFFICER BANKS: Okay.

Go ahead, Mr. Hoppe - wait a minute.  Now we move to discipline, and the decision of Barbara Jordan was that he be

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-53

expelled.  But the team wanted DCPS to
conduct what kind of evaluation?

       THE WITNESS: Psychiatric.

       HEARING OFFICER BANKS: Go ahead,
Mr. Hoppe.

       BY MR. HOPPE:

    Q    Beyond the evaluation of the
student, was any other action taken or
planned as of September 7th, the hearing on
September 7th, was the school determined to
take any other action in this matter?

    A    Beyond the expulsion

    Q    Beyond the expulsion, beyond the
psychological evaluation?

    A    We had other recommendations that
were discussed for him.

    Q    Was any recommendation discussed
with regard to his placement?

    A    Yes.

    Q    Schooling in the wake of his
expulsion?

    A    Yes.

    Q    What was discussed?

    A    That there be a more restrictive
environment, particularly day school or

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

T-54

private school for him.

Q    Were any particular day schools or private schools contacted in the wake of this hearing?

A    Not to my knowledge.  I know we had discussed Pathways and Accokeek (phonetic).

Q    Were either of them contacted with regard to the student?

A    Not to my knowledge.

Q    To your knowledge where was the student to attend school following his expulsion from the Barbara Jordan Public Charter School?

A    He was to attend his neighborhood school.

Q    His neighborhood school, which was?

A    McFarland.

Q    And were any efforts made on the part of Barbara Jordan to facilitate his immediate attendance at McFarland?

A    Yes.

Q    What efforts were made?

A    We put together a package of all

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-55

of his records, transcripts, and sent them

overnight with confirmation to his

neighborhood school.

     Q    And you mentioned that the parent

was present at the manifestation hearing on

September 7th?

     A    Yes.

     Q    Was the parent made aware that

his records were going to be transferred to

McFarland on that day?

     A    Yes.

     Q    At that hearing?

     A    Yes.

     Q    Very well.

     MR. HOPPE:  Nothing further for

this witness at this time.

     HEARING OFFICER BANKS: Ms.

Gambale.

     MS. GAMBALE: Yes.

     BY MS. GAMBALE:

       CROSS-EXAMINATION

     Q    First of all, as far as notice is

concerned, there was an incident report that

was dated June 16th; it's one of the exhibits

not labeled.  And there are two students

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

T-56

that are listed on this incident report.

Let me just ask you, were you the one who drafted this report?

A     No, I was not.

Q     And were you the one that called the parent?

A     No.

Q     And were you present when the parent was called?

A     No.

Q     So you don't know what information was given to the parent or not?

A     I know that the parent was made aware of the incident.

Q     You don't know if the parent was informed that Phillip was going to be expelled?

A     I told him that we were going to take disciplinary action –

Q     But during this phone call you don't know whether or not – you weren't the one that made the call and you weren't present so you don't know?

A     No.

Q     Okay.  So this – do you know

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-57

which parent the letter was sent to, the alleged letter was sent to?

A    His father.

Q    And do you have the address of the father?

A    Based on what I have, 734 Marietta Place on this.

Q    And you are saying that it was mailed out. Were you the one that mailed it out?

A    No.

Q    And I don't see a certified mail slip showing that it was sent.

A    I don't have it.

Q    So you have no documentation saying that it was mailed?

A    Except that I know it was mailed. But no, to answer your question.

Q    Well, if you didn't mail it, how do you know it was mailed?

A    Based on the person who told me it was mailed.

Q    But you never actually – you –

HEARING OFFICER BANKS: I get the picture, Ms. Gambale.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         (202) 234-4433

**T-58**

BY MS. GAMBALE:

Q    This issue was addressed at the meeting - and you also gave it to the student to take home?

A    I did not.  I did not, because as I said, there was a deputy in my stead.

Q    So you weren't there at the time that it would have been mailed?

A    Correct.

Q    It was your understanding that it was given to the student to take home with him; is that your understanding?

(No audible response)

BY MS. GAMBALE:

Q    This issue was addressed at the MDT meeting?

A    What do you mean, this issue?

Q    The issue of whether the parent had notice was addressed in the meeting notes?

A    Yes, we addressed that.

HEARING OFFICER BANKS: Which meeting notes are we talking about?

MS. GAMBALE: The meeting notes in my supplemental exhibit.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-59**

HEARING OFFICER BANKS: When did that meeting take place?

MS. GAMBALE: That's the meeting from the 7th.

THE WITNESS: And may I say in response to that, the father indicated that he remembered the incident, and that Bill had put the notice on the table, but after that –

MS. GAMBALE: Phillip said that he put the notice on the table.

THE WITNESS: The father indicated that he remembered the incident, and that he noted that Phillip put the letter on the table.

MS. GAMBALE: That's my copy of the –

HEARING OFFICER BANKS: Well, it's not signed. Ask him for his testimony. You can cross-examine him but you can't argue with him.

BY MS. GAMBALE:

Q    And was the psychologist at the meeting – was not a school employee?

A    What's your question?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-60**

Q    Was the psychologist at the meeting a school employee?

A    Yes.

Q    And did the team know whether or not McFarland was a more restrictive or a less restrictive environment for the student?

A    I couldn't say for sure; I would only be speculating.

HEARING OFFICER BANKS: Wait a minute.  What is McFarland?

THE WITNESS: That's his home school.  That's his middle school.

HEARING OFFICER BANKS: It's a home public middle school.

THE WITNESS: Yes.

HEARING OFFICER BANKS: And you are going to tell me you don't know whether or not that is more restrictive than Barbara Jordan or less?

THE WITNESS: It's a less restrictive environment, but I can't –

HEARING OFFICER BANKS: It's a less restrictive environment than Barbara Jordan?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

T-61

THE WITNESS: What I mean is that he – it's the environment that he – that's not the appropriate – what we talked about the meeting we don't know –

HEARING OFFICER BANKS: Let me just do it this way.  Isn't McFarland a typical public middle school?

THE WITNESS: Yes.

HEARING OFFICER BANKS: Not special ed?

THE WITNESS: No.

HEARING OFFICER BANKS: So that is a less restrictive environment than Barbara Jordan; is that your position?

THE WITNESS: Yes.

HEARING OFFICER BANKS: But the MDT thought he needed a more restrictive environment?

THE WITNESS: Right.

HEARING OFFICER BANKS: But McFarland is a less restrictive environment? Okay.

BY MS. GAMBALE:

Q    Now you had said that there were two disciplinary actions before in your

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-62

testimony with Phillip?  Was the first

incident the one that is documented in the

statement where he said he wanted to kill

himself?

HEARING OFFICER BANKS: Where are

you?  I don't know anything about that.

MS. GAMBALE: I'm sorry, there was

an incident report dated June 1st, in Barbara

Jordan's exhibit.

HEARING OFFICER BANKS: What

document are you talking about?  Help me

identify the document?  Which page?

MS. GAMBALE: It is the third

page, the third and fourth page.

HEARING OFFICER BANKS: Injury

incident report?

MS. GAMBALE: Uh-huh.

HEARING OFFICER BANKS: Okay,

we'll call that Petitioner's No. 1, right?

It's the first document after the letter?

MS. GAMBALE:

HEARING OFFICER BANKS: Uh-huh.

(Whereupon the

aforementioned document

was marked for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

identification as

Petitioner's No. 1)

HEARING OFFICER BANKS: So with

respect to Petitioner's No. 1, what is the

question?

BY MS. GAMBALE:

Q    Was this the incident that you

were referring to as being the other

incident?

A    Yes.

Q    And you said that records were

mailed from the school on the 8th?

A    Correct.

Q    Were you the ones that mailed the

records?

A    No.

Q    And did you know whether or not

the immunization records were included with

the records that were sent?

A    Immunization records?

Q    Uh-huh.

MR. HOPPE: Objection to

relevance.

HEARING OFFICER BANKS: What's

relevant to the immunization records?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

MS. GAMBALE: Well, all of the records weren't sent.

HEARING OFFICER BANKS: Please.

MS. GAMBALE: Okay. I have no further questions.

HEARING OFFICER BANKS: Any redirect, Mr. Hoppe.

MR. HOPPE: No, Your Honor, no redirect.

HEARING OFFICER BANKS: Okay, here's my question.

MR. HOPPE: I have two other witnesses.

HEARING OFFICER BANKS: My question.

MR. HOPPE: Oh, I'm sorry.

HEARING OFFICER BANKS: On the issue of manifestation why was it your opinion that the psychologist was wrong?

First of all, what is his classification?

THE WITNESS: PD.

HEARING OFFICER BANKS: Okay, so he is emotionally disturbed. The school psychologist that this behavior, whatever it

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-65

was - he set off fire crackers in the school?

THE WITNESS: Right.

HEARING OFFICER BANKS: Was a manifestation of his emotional disturbance. What was the basis for your disagreement with that conclusion?

THE WITNESS: Because when I looked at the behavior intervention plan that we looked at the meeting, it was my impression that the behaviors that we were addressing were in no way related to what needed to be addressed on the behavior intervention plan.

And also, that hazardous material according to our school policy constitutes an expulsion.

HEARING OFFICER BANKS: Is Barbara Jordan primarily a special ed school?

THE WITNESS: No.

HEARING OFFICER BANKS: So it's primarily for children who are not special ed?

THE WITNESS: We are an inclusion model, yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-66

HEARING OFFICER BANKS: So most of your kids are not emotionally disturbed?

THE WITNESS: Correct.

HEARING OFFICER BANKS: So you have one child, this one child is, and so what you are saying is that the standards for discipline are the same whether or not a child is emotionally disturbed or not?

THE WITNESS: That's correct. However, there are determinations that are made — I mean every child is afforded due process.

HEARING OFFICER BANKS: Okay.  You have another witness, Mr. Hoppe?

(Witness excused)

MR. HOPPE: Yes, I have two more. I call Mr. Williams.

Whereupon,

ALLEN WILLIAMS

was called as a witness by counsel for the DCPS and, after having been first duly sworn was examined and testified as follows:

DIRECT EXAMINATION

BY MR. HOPPE:

Q    Mr.  Williams, sir, would you

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-67

state your name and occupation, sir?

A    Allen Williams, dean of students.

Q    And Mr. Williams, were you the dean of students during September of 2004?

A    Yes.

Q    And are you acquainted with a student by the name of Phillip Liverpool?

A    Yes.

Q    During the month of June of 2004 were you aware of any incidents involving Mr. Liverpool which would be subject to school discipline?

A    Yes.

Q    Would you describe when that incident occurred, and what the nature of that incident was?

A    June 16th being the set for Mr. Robinson, in his absence, I know that I went past his room, and I was told by his teacher that it was a certain substance smoking from his desk and another student's desk. I went to them. We had an opportunity to have our security on staff do a search, had an opportunity to search him and ask him questions and interview him on the subject

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

T-68

that was burning inside his locker.

HEARING OFFICER BANKS: You said desk before.  Was it desk or locker?

THE WITNESS: Desk, I'm sorry, I apologize.

Desk, and have him find a smoldering substance, like a piece of burned paper that seemed to me, to the best of my knowledge, as a fire cracker, or a fire cracker stem.  I had security be able to search his pockets, and he did not have fireworks on him.  However he did say that he and another student succeeded in lighting a firecracker inside the classroom, and he said he lit another one in the bathroom, which I know another half of a firecracker was in the bathroom.

Once I got a chance to get that paperwork together, in other words, write his letter together, I did give his father a call letting him know that Phillip along with another student participating in the lighting of a firecracker inside of a classroom.

When – and I explained to him

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-69

that he would not be able to come back to
school until he had a manifestation meeting
through and in our office; handed Phillip
the letter stating the same situation; and
also mailed out the letter the very next
day.  But I had to do it from the post
office, because it was registered, because
our registered mail was down; that's why we
don't have a slip on that.

            HEARING OFFICER BANKS:  But you
said you talked to the father by phone?

            THE WITNESS: Yes, I did.

            HEARING OFFICER BANKS: Go ahead.

            THE WITNESS: So once we
interviewed the student, Phillip did say
that he participated.  Once I talked to the
father, the father said okay, and didn't
have much more to say after that.  And all
the information and all the fireworks in the
light of that, that he and another student
had, I put in envelopes and turned it over
to the proper - to my superiors.

            BY MR. HOPPE:

      Q     You said that you discovered
something that appeared to be the stem of a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-70**

firecracker in his desk; is that correct?

HEARING OFFICER BANKS: Where are you going with this?

MR. HOPPE: Was that Phillip's desk?

HEARING OFFICER BANKS: I don't need intimate detail. The kid lit a firecracker. That's not disputed.

BY MR. HOPPE:

Q    You said that a notice of concern was mailed out, was given both to Liverpool and was mailed on June 16th, is that correct?

A    Correct. That letter of concern was mailed the next day, because we couldn't get to the post office, but it was mailed the very next day. But he was given the letter to take home, is our normal practice, on the 16th, on the day of – the day the notice was supposed to go out. And our normal practice is that we call – we hand the letter to the student, and also make the phone call as well. So that was our normal practice.

Q    And as dean of students you would have been the person whose signature would

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

T-71

appear on the notice?

    A    Correct, yes, sir.

    Q    So you prepared that notice yourself?

    A    Yes, I did.

    Q    And you personally mailed it yourself?

    A    Yes, I did.

    Q    And in the course of your conversation with the parent, would you discuss the manifestation hearing, or the need for a manifestation hearing, or just the incident that occurred?

    A    No, the only thing I discussed were the things I could discuss, which was the fact that our principal, Mr. Robins, said that Phillip could not return to school without a manifestation hearing, and that one would be forthcoming on the 21st of June.

    Q    And in your telephone call with the parent, you made that statement?

    A    Yes, sir.

    Q    Are you aware of whether a manifestation hearing was actually conducted on June 21st?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

T-72

A    I do know one was created, but I cannot speak on whether or not it was carried through or not.

Q    So you would not have been in attendance at the hearing itself?

A    No, I would not.

Q    Very well.  Nothing further for this witness.

HEARING OFFICER BANKS: Ms. Gambale?

MS. GAMBALE: We should be at page number nine.

HEARING OFFICER BANKS: Okay, let's go through this.  Injury incident report, June 1, is Plaintiff's No. 1 – Petitioner's No. 1.

Is this a discharge summary? That's Petitioners No. 2.  That's two pages.

(Whereupon the aforementioned document was marked for identification as Petitioner's Exhibit No. 2)

HEARING OFFICER BANKS: There's a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

**T-73**

two-page letter from Barbara Jordan to Mr.

Richard Rogers from Mr. Aaron Williams.

That will be Petitioner's No. 3.

> (Whereupon the
>
> aforementioned document
>
> was marked for
>
> identification as
>
> Petitioner's No. 3)

HEARING OFFICER BANKS: Notice of

concern is Petitioner's No. 5

> (Whereupon the
>
> aforementioned document
>
> was marked for
>
> identification as
>
> Petitioner's Exhibit
>
> No. 5)

HEARING OFFICER BANKS: And Notice

of Expulsion is Petitioner's No. 6.

> (Whereupon the
>
> aforementioned document
>
> was marked for
>
> identification as
>
> Petitioner's No. 6)

HEARING OFFICER BANKS: Now which

one are you referring to now?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-74

MS. GAMBALE: I am referring to Petitioner's No. 5.

CROSS-EXAMINATION

BY MS. GAMBALE:

Q     Are you familiar with this document?

A     Yes, I am.

Q     And is this your signature?

A     Yes, it is.

Q     Were you aware that this is addressed to a Mrs. Brown?

A     Yes, I made a typo.

Q     And there is no address that is included here to say what address it's mailed to?

A     It's not included on the letter. However it is included on the envelope.

Q     And at the meeting the parent said he did not receive the letter?

A     Well, I don't know whether or not —

Q     Were you at the September 7th meeting?

A     Yes, I was.

Q     And at the meeting, the parent

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-75**

said that he didn't receive the letter, do
you recall?

HEARING OFFICER BANKS: Is that a
question?

MS. GAMBALE: I'm asking if he
recalls.

HEARING OFFICER BANKS: You have
to ask him a question.

MS. GAMBALE: I'll withdraw the
question.

HEARING OFFICER BANKS: You can
put it in the form of a question.  Just put
a question mark at the end.  I just want to
make sure that you ask a question.

I'll ask the question: Were you
at the meeting?

THE WITNESS: Yes, I was, but I
was a late attendee.

HEARING OFFICER BANKS: Okay, was
the father at the meeting?

THE WITNESS: Yes, he was.

HEARING OFFICER BANKS: Was there
any discussion as to notice of the June 21st
meeting while you were at that meeting?

THE WITNESS: Not while I was at

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-76

the meeting.

HEARING OFFICER BANKS: Okay, go ahead.

MS. GAMBALE: I have no further questions of this witness.

HEARING OFFICER BANKS: Any redirect, Mr. Hoppe?

MR. HOPPE: No.

HEARING OFFICER BANKS: Okay, the only thing I was going to ask Mr. Hoppe asked. You told the parent by phone on the 16th that the meeting would be on the 21st?

THE WITNESS: Yes.

HEARING OFFICER BANKS: Thank you.

(Witness excused)

HEARING OFFICER BANKS: You have another witness?

MR. HOPPE: Yes, the next is Janice Toppen.

Whereupon,

SAMANTHA TOPPEN (PHONETIC)

was called as a witness by counsel for DCPS

and, after having been first duly

sworn, was              examined and

testified as follows:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-77

DIRECT EXAMINATION

BY MR. HOPPE:

Q    Would you state your name and place of employment, please?

A    Yes, my name is Samantha Janice Toppen.  I am the director of special education for Barbara Jordan Public Charter School.

Q    Are you familiar with a student by the name of Phillip Liverpool?

A    Yes.

Q    How did you become aware of Mr. Liverpool?

A    Phillip Liverpool.

Q    And did you became aware of him when he first enrolled at Barbara Jordan?

A    Yes.

Q    And when a special education student enrolls at Barbara Jordan, are you given any details of any disability or indicate the reason why he is in the special education program?

A    In this case we did not receive all of Phillip's records, along with the current IP; that was something I had to work

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-78**

on in cooperation with the parents.  But we soon got them.  But not at the onset, at the beginning, when he entered on day one.

Q      Well, as soon as you were aware of his need for special education and the nature of his need for special education, what was done on his behalf?

A      Phillip, with the disturbances, he received a total of 16 hours of service, and one of those related services, counseling, and the rest are academic.

Q      Okay, why the counseling?

A      Because it was deemed necessary from his previous school, which was Whittier.

Q      And why did Whittier – did Whittier inform you that he needed counseling?

A      Yes, on the IP as well as we received a clinical evaluation that was done Tuesday saying the in school services were necessary.

Q      What do you mean by in school services?

A      In school counseling services,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         (202) 234-4433

T-79

meaning throughout the course of the day Phillip would receive counseling from a school psychologist and/or social worker for one hour once a week.

Q    And they did they tell you specifically why the reason they felt he needed this counseling?

A    That is to make sure he was included in the clinical evaluation, and then of course there are goals that are attached to the IEP, social and emotional goals, which the counselor implements those goals throughout her sessions with Phillip.

Q    And for what reason were these goals set?

HEARING OFFICER BANKS: Where are you going with this?

MR. HOPPE: What is the specific nature of this child's disability and his need for counseling?

THE WITNESS: According to the IEP dated 9/24/03 Phillip's annual goal is, Phillip will verbalize his feeling and identify factors that trigger his anger or cause him to withdraw 80 percent of the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

**T-80**

time; and Phillip has three short term
objectives.  Number one, Phillip will
verbalize his feelings of frustrations, his
needs, and what he wants to have happen; to
his counselor.  Number two, Phillip will
identify factors that trigger him to lose
his temper or make him withdraw with his
counselor.  And number three, Phillip will
verbalize his coping mechanisms with his
counselor.

        BY MR. HOPPE:

    Q    And when were those goals set?

    A    Those goals were set the IEP
meeting dated 9/24/03.

    Q    Very well.  And are you aware of
any progress made, or did your receive
reports of any progress made toward
attempting to achieve those goals?

    A    Yes, our school psychologist, Dr.
Pamela McCullom Butler (phonetic), would
have that information.

    Q    Did she ever provide you with
that information?

    A    Well, we would have reviewed
Phillip's IEP on 9/24/04.  However, Phillip

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

T-81

had been expelled prior to that date.

Q    And were you aware of any behavioral or disciplinary incidents involving Phillip at the school?

A    Yes.

Q    Well, I know overall Phillip had a really tough time adjusting to his teacher, classroom teacher.  He definitely had a problem with respect to authority.  Phillip's teacher, during the course of the school year, was a woman.  And it was a very – it was a relationship that contained a lot of friction, and we didn't have a lot of support from the home in trying to correct some of the behaviors that we were seeing at the school, which made it very difficult for Phillip.

Q    Were you aware of an incident taking place on June 16th of '04?

A    Yes.

Q    Can you describe how you became aware of that incident?

A    By telephone.  I was not at work that day.  But I was contacted that morning.

Q    Very well.  Were you aware of a

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-82

manifestation hearing being set up in
relation to that incident that you were
informed of by telephone?

    A    Yes, through that phone
conversation I was informed that a
manifestation hearing would occur June 21st.

    Q    Were you intent on being in
attendance at that hearing?

    A    Yes.

    Q    Is it your practice as the
special education coordinator to be in
attendance at such hearings?

    A    Yes.

    Q    Were you in attendance at the
intended hearing on the 21st?

    A    Yes, but it did not take place.

    Q    Why didn't it take place?

    A    There was a no show.  No one
showed.

    Q    Who else was there ready to hold
the hearing?

    A    The Barbara Jordan Public Charter
School staff, principal, Mr. Rogers, the
executive director at the time.

    HEARING OFFICER BANKS: Mr. Hoppe,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

**T-83**

we've established this through two witnesses already.  The parent didn't come.  The parent got notice, is your testimony.

MR. HOPPE: Very well.

HEARING OFFICER BANKS: Go ahead.

You don't have to stop with the witness.

MR. HOPPE: Mr. Williams said he wasn't there.  I just wanted to make sure it was documented.

BY MR. HOPPE:

Q    Do you know what action if any was taken in the wake of the parent's failure to appear on the 21st?

A    Yes, another letter was mailed, and faxed, to Ms. Roberta Gonzalez on 7/2/04, as well as Ms. Betty Liverpool as well as Mr. Brown, for all parties involved was aware that a meeting was to take place on – the choices were July the 12th at 10:00 a.m.; July the 13th at 12:00 noon.

HEARING OFFICER BANKS: You said that the letter was sent and faxed to Ms. Gambale, Mr. Liverpool and did you say a third person?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-84**

THE WITNESS: Yes, Betty
Liverpool.

HEARING OFFICER BANKS: The
mother?

THE WITNESS: Yes, because we had
received correspondence that Ms. Gambale was
representing her as well.  So we sent all
parties involved.

HEARING OFFICER BANKS: And that
letter set a date of –

THE WITNESS: I gave him a choice
of July the 12th –

HEARING OFFICER BANKS: 12th and
13th?

THE WITNESS: Yes.

BY MR. HOPPE:

Q    Did anyone respond to that
mailing and/or fax with choosing any of the
options or dates that you gave them?

A    To my knowledge, no, I don't have
any response in my file.

Q    But are you certain, did you
receive fax confirmations from the people
whom you attempted to fax?

A    Yes, I did.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-85

Q    And from whom did you receive fax confirmations?

A    Ms. Gambale, you, 742209.  Yes, that's Ms. Gambale's number.  And on that fax confirmation I put both parents' names on that as well.

HEARING OFFICER BANKS: Ms. Gambale?

MS. GAMBALE: I have nothing further for this witness.

HEARING OFFICER BANKS: Okay. Just as a work of caution, those fax confirmations should have been in the disclosure.

MR. HOPPE: I understand, and they should have all been labeled.  And I apologize.

HEARING OFFICER BANKS: That's all right.  Ms. Gambale cut you some slack, so I don't have to rule on a motion to exclude.

Okay, do I have a question for this witness?

I'm sorry, do you have any redirect of this witness?

MR. HOPPE: No, I do not.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-86**

HEARING OFFICER BANKS: Okay, do you have another witness?

MR. HOPPE: No, I do not.

(Witness excused)

HEARING OFFICER BANKS: Ms. Gambale.

MS. GAMBALE: The first person I'm going to call is the father.

HEARING OFFICER BANKS: How many people are you going to call?

MS. GAMBALE: I'm going to call two.

HEARING OFFICER BANKS: Let's take a five-minute recess.

(Brief recess)

HEARING OFFICER BANKS: Back on the record.

HEARING OFFICER BANKS: Sir?

MR. BROWN: Yes, how are you doing?

HEARING OFFICER BANKS: Good.  I'm going to place you under oath.  You will be asked questions by Ms. Gambale.  When she is done, you will be cross-examined by Mr. Hoppe who is counsel for Barbara Jordan

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-87**

Public Charter School.

Whereupon,

[FIRST NAME] BROWN

was called as a witness by counsel for the petitioner and, after having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. GAMBALE:

Q    When did you get notice - first, what is your relationship to Phillip?

A    His father.

Q    And Phillip is in your care?

A    Yes, ma'am.

Q    And when did you get notice that Phillip wouldn't be allowed to attend Barbara Jordan Charter School during the 2004-2005 school year?

A    That August 30th, 2004.

Q    And how did you get notice?

A    From his principal.

Q    And did you have any communication with the school prior to that?

A    No, ma'am.

Q    Did you attend a parent

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-88**

orientation?

A     Yes, ma'am.

Q     And when did that occur?

A     It was probably August 24th or 25th, something like that.  A couple of days before, like a week before school started.

Q     And did anyone from the school contact you during the summer?

A     No.

Q     And were you aware of the incident on the 16th?

A     Yes, I was aware of it.

Q     Well, tell us what you were aware of?

A     They just called and told me what he was suspended for.

Q     And what was that?

A     He is supposed to have lit a firecracker in class.

Q     And did they tell you he would be expelled from Barbara Jordan?

A     No, they didn't say he was going to be expelled.

Q     And when did you enroll Phillip at the neighborhood school?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-89**

A      It was like September 15th, 2004.

Q      Was that when you enrolled, is that when he attended?

A      That's when he attended.

Q      Did you have any problems enrolling Phillip at the neighborhood school?

A      They didn't send his shot records, so I had to get them myself and take them down to the school.  They sent his IEPs but not his shot records.

Q      And what did the neighborhood school say to that?

A      They said he couldn't attend school until he got his shot records.

HEARING OFFICER BANKS: What kind of records?

THE WITNESS: His immunization records.

MS. GAMBALE: I have no further questions.

HEARING OFFICER BANKS: Mr. Hoppe.

CROSS-EXAMINATION

BY MR. HOPPE:

Q      You say that you were told that

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

T-90

Phillip was suspended but not expelled.
They didn't say expelled.  What exactly did
they say?

    A    They just told me this incident
that he had, but they didn't say that he was
expelled.

    Q    Did they say he was suspended?

    A    No, the first thing they called
me saying was he coming back to that school.
And I told them yes.  But when I got back to
the school they were saying it was a problem
that we had to have a hearing for him to get
back to school which I didn't know nothing
about.

    Q    Well, when they told you about
the incident, didn't they tell you in June
on June 16th that there had been an incident
at school with regard to him?

    A    Yes.

    Q    What did they say they were doing
in regard to that incident?

    A    They didn't say what they were
going to do.  They just say he was being
sent home for lighting a firecracker in
class.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

T-91

Q     Do you recall with whom you spoke?

A     It was a Mr. Williams.

Q     And do you recall when that conversation took place?

A     It was the day when he did it.

Q     Would that have been in the middle of June?

A     Yeah, like the last few days of school.

Q     And is it your testimony then that the very next conversation, the very next contact you had with the school was when you came back on August 30th to enroll them?

A     Well, during the summer, someone called me from the school and asked me was he returning, and I told them yes.

Q     Do you recall who that was?

A     No, I don't recall who that was. It was a female.

MR. HOPPE: I have nothing further from this witness at this time.

HEARING OFFICER BANKS: Any redirect?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-92

MS. GAMBALE: No.

HEARING OFFICER BANKS: Okay. Mr. Brown, when Mr. Williams called you on June 16th to tell you about the incident, did he tell you that Phillip could not come back to school?

THE WITNESS: No, he didn't say that. He just said he was being sent home.

HEARING OFFICER BANKS: Well, what does that mean? If he's been sent home, does that mean he can come back to school?

THE WITNESS: I mean school was almost over.

HEARING OFFICER BANKS: Well, was it over or wasn't it over?

THE WITNESS: It was like two or three days before school was over. It wasn't no use for him to go back.

HEARING OFFICER BANKS: Did he go back the next day?

THE WITNESS: I don't think so.

HEARING OFFICER BANKS: Why not?

THE WITNESS: Because the school was already over, so there wasn't no point in me sending him back. They didn't say he

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

**T-93**

was being suspended or expelled.

HEARING OFFICER BANKS: Wait a minute, you just said that there were two or three more days of school left.  So did he go to school the next day?

THE WITNESS: No.

HEARING OFFICER BANKS: And that's because you didn't want him to go?

THE WITNESS: I didn't let him go.

HEARING OFFICER BANKS: And why didn't you let him go?

THE WITNESS: Because school was almost out.

HEARING OFFICER BANKS: But it wasn't out.  So you elected to keep him out of school?

THE WITNESS: Yes.

HEARING OFFICER BANKS: Is it your understanding that he could have gone to school had you wanted him to?

THE WITNESS: Yeah, if I wanted him to.

HEARING OFFICER BANKS: So you were not told that he was then suspended?

THE WITNESS: Or expelled.  If

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-94**

they had told me that, I wouldn't have came

back to the school the next start of school.

        HEARING OFFICER BANKS: Okay, did

they tell you that there was going to be a

hearing or a meeting about this event?

        THE WITNESS: No.

        HEARING OFFICER BANKS: Did you

get a notice in the mail about the event?

        THE WITNESS: They already stated

they gave my son the paper.  He didn't get

it to me.

        HEARING OFFICER BANKS: Okay.

Thank you very much.

        THE WITNESS: Thank you.

        MS. GAMBALE: Thank you, Mr.

Brown.  I'm going to hang up now, and then I

will give you a call after the hearing is

over.

        THE WITNESS: Okay.

        (Witness excused)

        HEARING OFFICER BANKS: Okay, Mr.

Gambale, do you have another witness?

        MS. GAMBALE: I do, I have Ms.

Moody.

Whereupon,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

T-95

[FIRST NAME] MOODY

was called as a witness by counsel for the

petitioners and, after having been first

duly sworn, was examined and testified as

follows:

DIRECT EXAMINATION

BY MS. GAMBALE:

Q    What is your involvement in this

case?

A    I am the educational advocate for

Phillip.

Q    And what are your qualifications

to be an education advocate?

A    I have a bachelor's degree in

English, a master's degree in special

education; special education credential;

regular education credential; resource

specialist credential; and I taught school

for 10 years, taught special education;

served as a special education coordinator at

the middle school level for four years; and

I served as assistant director for special

education for a school district, for

Danville Public Schools in southern

Virginia.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-96**

And then I've been an educational advocate for four years now.

Q    And did you receive any proposed meeting dates during the month of July for Phillip Liverpool?

A    Yes, I did.  And the dates proposed were July 12th and July 13th.

Q    And what was your understanding of the purpose of the meeting?

A    Just to have a meeting.  And it was my impression that it was maybe to redo the IEP, since the last one was in 2003, September, 2003.

Q    Was there anything in the letter that indicated that Phillip was being expelled or that it was an expulsion hearing?

A    No.

Q    And did you respond to the letter?

A    Yes, I did.

Q    And when did you respond?

A    July 7th.

Q    And how did you respond?

A    In writing, I faxed a letter back

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-97**

to the school and told them July 12th and

July 13th were not convenient for the parent,

and I proposed alternate dates, August 16th,

17th, or 18th.

Q    Okay, and did you get a response

to that letter?

A    No, I did not.

Q .    And did you have a confirmation

that the letter was received?

A    Yes, I do.

Q    And did you - was a meeting

eventually held?

A    Yes.

Q    And when was the meeting held?

A    September 7th.

Q    And who scheduled the meeting?

A    I think that my first

communication was with Ms. Tappen, and I

think we scheduled it over the phone.  I

don't believe we did it in writing.

HEARING OFFICER BANKS: Do I

understand - I do not have a copy of the

notice sent for these June meetings - the

July meetings, 12 and 13, those are not in

the record, is that correct?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-98

MR. HOPPE: Probably they are not, Your Honor.

HEARING OFFICER BANKS: Okay, go ahead.

BY MS. GAMBALE:

Q    And did you attend the meeting?

A    Yes.

Q    And what happened at the meeting?

A    At the meeting, at that point, they told us that Phillip would be expelled. And I asked them if they would reconsider, if they were willing to reconsider, and they would not.

Also we had an MDRT (phonetic), and I - it was my position that it was a manifestation - the behavior was a manifestation of the student's disability, and the psychologist agreed with me.

Q    And was the IEP addressed at that meeting?

A    I don't remember specifically, but at the meeting we agreed that the student needed a more restrictive environment; and we did not rewrite the IEP, but we agreed that the student needed

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-99**

increased services, increased counseling

services, needed a crisis intervention team

at whatever placement the student was

placed, and we did agree that Phil needed

increased services.

    Q    And was the behavior intervention

plan revised at the meeting?

    A    No.  No.

    MS. GAMBALE: I have no further

questions.

    HEARING OFFICER BANKS: Mr. Hoppe.

    CROSS-EXAMINATION

    BY MR. HOPPE:

    Q    You said that you got these

hearing dates.  How did you receive the

hearing dates in July?

    A    Now, there is a difference

between hearing and meeting.  Do you mean

the meeting dates in July?

    Q    Well, the dates you spoke of on

direct, whatever they were.  You said you

received two dates in July.  How did you

receive those?

    A    I think that I got those from a

letter.  And the way I know that, because I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-100

don't have a copy of the letter with me, but the way I know that is that July 7th I faxed a letter, and it says, I'm writing in response to a letter I received from you July 7th. So that indicates that I received a letter from the school. But I don't have the letter with me.

Q    You say that you said the dates of the 12th and 13th were inconvenient for the parents. Did you talk to the parents?

A    Oh, yes.

Q    When did you talk to the parents?

A    I don't remember, sir.

Q    But it would have obviously been before your reply on July 7th?

A    Yes.

Q    So you say a meeting was held on September 7th that you heard about not in writing? Meaning a meeting was eventually held on September 7th that you were informed of over the telephone by Ms. Thompson (phonetic), is that right?

A    Yeah, I think we talked on September 3rd.

Q    Very well. And you are saying

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-101

that only upon your attending that hearing that you found out that consideration was given on expelling him?

A    Yes, because I'll tell you, had I known that in July, I would have been sending out placement packets, and I would have expedited meetings so I could have found a placement over the summer.

Q    I simply asked if you knew ahead of going into that meeting – now, so you walked into that meeting, what did you think that hearing was about?  What were you prepared to discuss?

A    On September 3rd they told me it was MDRC (phonetic).  So I was prepared on September 7th.

Q    For an expulsion hearing.

A    Not expulsion, MDRC.

Q    MDRC.

A    And that's much different.

Q    Very well, I asked what you were prepared for.

A    MDRC.

MR. HOPPE: Nothing further for this witness at this time.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

**T-102**

HEARING OFFICER BANKS: Redirect?

REDIRECT EXAMINATION

BY MS. GAMBALE:

Q    In your letter you stated that you had received a letter of invitation?

A    Yes.

Q    Is that a particular form letter?

A    You know what?  I don't remember. And the only reason I know that I received a letter of invitation was because my letter, I wrote down I'm writing in response to the letter of invitation I received from you July 7th.  So that's why I'm thinking it's a letter.

MS. GAMBALE: Okay, I have no further questions.

(Witness excused)

HEARING OFFICER BANKS: Okay, you want another witness?

MS. GAMBALE: No, that's it.

HEARING OFFICER BANKS: Okay, would you like to close?

MS. GAMBALE: Yes.

CLOSING STATEMENT BY COUNSEL FOR THE PARENT

MS. GAMBALE: The bottom line here

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-103

is that, you heard the evidence.    The

parent testified that the parent did not

actually have notice, and with something of

this nature, there should have been more

communication from the school, at least a

response to the letter that was sent out in

August.

We have no confirmation of notice

being mailed to the parent; we have no fax

confirmations of any kind of notice being

sent; and we have the notice of the meeting

that pretty much explained the parent's

position that he did not receive the letter;

and we have a situation where basically this

student is being excluded from a placement

inappropriately.

If you look at Section 523, 523

is very clear.    It basically states that

when there is a manifestation, that - it

says that qualified personnel may determine

that the behavior of the child was not a

manifestation of the child's disability only

if the IEP team and other qualified

personnel, one, first consider in terms of

behavior all the relevant information which

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-104**

includes the IEP, the placement, the
evaluation observations; and then two, they
are required to determine that the IEP and
the placement were appropriate.  It says, in
relationship to the behavior subject to
disciplinary action, it says, IEP and
placement were appropriate, and that the
services were being provided in accordance
with the IEP.

And in the meetings themselves,
they indicate the placement was not
appropriate, and that he required a more
restrictive setting.

And I guess my concern here for
this child is that a whole summer went by
where no one knew except Barbara Jordan that
Phillip wasn't going to be allowed to come
back, prohibited DCPS from being able to
locate a placement, and prohibited the
parent from being able to locate a
placement.

And then as a result of that, the
child wasn't able to start at the school
until the 15th, and at the meeting everybody
acknowledged that going to the neighborhood

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-105

school was not going to be an appropriate environment for him, that he needed a more restrictive setting.

So basically what they were doing is creating even more instability and insecurity for this student. And they were on notice, not only was he diagnosed as being emotionally disturbed, but they also – there was also an incident that occurred just a couple of weeks prior where he had threatened to kill himself, so they knew he was in a fragile emotional state.

And my concern is that this whole situation, it completely disregarded his welfare, and it forced him to undergo additional insecurity and instability; and then nothing complies with what the IDEA requires in terms of discipline.

They didn't hold the review hearing. They didn't properly notify the parent. They didn't – in the determination itself completely didn't coincident with what the statute and the regulations require.

HEARING OFFICER BANKS: And what

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-106

do you think the appropriate relief is
should I find in your favor?

MS. GAMBALE: What I think is,
first of all, the charter school needs to be
the one to schedule the placement meeting,
because they do have more information there
on the student.  And at this point in time,
the most that we can hope for is to try to
minimize some of the damage that has already
been done.

But basically the charter school
should provide him with compensatory relief
to help make up for first of all the fact
that he is starting off two weeks behind
everybody else in school.  So he should be
entitled to compensatory education.  And
what we were asking for was at least five
hours of compensatory education for each day
of one-on-one instruction for each day that
they — that they excluded him.

HEARING OFFICER BANKS: Five
hours?

MS. GAMBALE: Yes, and the reason
—

HEARING OFFICER BANKS: Per day?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

T-107

MS. GAMBALE: Per day.  And the
reason for that is because not only –

HEARING OFFICER BANKS: That's
like being in a one-on-one class all day
everyday.

MS. GAMBALE: Well, they don't
have to give it to him all at once.

HEARING OFFICER BANKS: But maybe
I'm not understanding what you are asking
for.  I think what you are asking for is
five hours of comp ed that he wasn't in
class.  For every day or every week?

MS. GAMBALE: For everyday.

HEARING OFFICER BANKS: That would
be like being in one-on-one everyday.

MS. GAMBALE: Well, in this
particular case, not only is he going to
need some assistance to help like get him
caught up –

HEARING OFFICER BANKS: I
understand that, Ms. Gambale.  But you only
get five hours of comp ed for missed
services.  I mean even if IEP calls for full
term, the appropriate comp ed would not be
five hours of one-on-one service per day

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-108

missed.

MS. GAMBALE: The reason why we determined that is because not only did he miss the instruction - he didn't get any instruction on those days whatsoever - but also he's been hurt by the instability that the whole thing -

HEARING OFFICER BANKS:  - adjudicate the violation which may or may not have occurred, starting June 16th, at the end of the school year.

So what we are talking about is how much time he lost from June 16th through whenever he gets an appropriate placement.

MS. GAMBALE: No, I was talking about for the days that he was completely out of school.

HEARING OFFICER BANKS: That's right, June 16th through the 21st.  When was the last day of school?  Nobody offered any testimony on that.  The only thing I heard was from the father, that two or three days were left.

But essentially what you are talking about is from June 16th to whenever

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-109

the school year ended, and then the

beginning of 2004.

MS. GAMBALE: August 30th through

the 13th – to the 15th was what I was

specifically looking at, five days (sic) for

each of the school days that he missed

during that time period, because they

wouldn't actually let him in the classroom.

HEARING OFFICER BANKS: Okay,

well, I can assure you you won't get five

hours per day.  But if comp ed was

appropriate, I will come up with a number.

Okay, so in response to the

question as to what you think the

appropriate relief would be, one would be

the charter school convening a placement

meeting; number two, charter school

providing comp ed.

What else?

MS. GAMBALE: At this point the

parent feels like it would be worse to send

him back to the charter school.

HEARING OFFICER BANKS: The

charter school said he's not appropriate

placement, so I can't do that.  So if they

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-110

say it's not appropriate I can't send him
there.

MS. GAMBALE: So basically that's
what we're seeking, because ultimately they
are not going to be the ones responsible for
the placement.

HEARING OFFICER BANKS: Okay.  So
they have no control of DCPS, so DCPS has to
be at the meeting.

MS. GAMBALE: Yes.

HEARING OFFICER BANKS: Okay, Mr.
Hoppe (Phonetic) what are you proposing?

MR. HOPPE: (Inaudible)

HEARING OFFICER BANKS: I need
that exhibit.

MS. GAMBALE: The only other thing
is for DCPS to be notified of the meeting.

HEARING OFFICER BANKS: Ms. Moody,
have you sent out admission packages?

MS. MOODY: Let me look.  You know
what I did?  I think at the meeting I
requested that they send out placement
packets to three different - four different
placements.  I requested that they do it at
the meeting.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-111

HEARING OFFICER BANKS: And who is "they"?

MS. MOODY: That DCPS do it, because the monitor for DCPS, Dwight Thomas, he was invited to the meeting. So that's why I asked Barbara Jordan to put him on notice immediately following the meeting of the things I was requesting, so he would send out placement packages. That's why he came into play, because he was invited.

HEARING OFFICER BANKS: But he wasn't at the meeting.

MS. MOODY: No, uh-uh. So it was my information that they were going to fax me information.

HEARING OFFICER BANKS: Did you do that?

VOICE: Yes, I did. And there is – I faxed it to him on 9/8/04.

HEARING OFFICER BANKS: Do you know if he did it?

VOICE: I have no idea, no. We will send out placement packets to the places that they haven't already been sent.

HEARING OFFICER BANKS: That would

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-112

be good.

Mr. Hoppe.

CLOSING STATEMENT BY COUNSEL FOR DCPS

MR. HOPPE: First of all, I believe there may not be need for remedies, and I'm not certain the remedy being requested is appropriate anyway.

And I believe that you heard testimony with regard to the notification of the parent, that the incident occurred.

You have heard testimony – I know the parent's testimony conflicts – that there was a manifestation hearing attempted to be scheduled, initially scheduled, for June 21st –

HEARING OFFICER BANKS: Let me say something, we are focusing a lot of attention on the period June 16th to the 21st. I don't think that's all that critical. School was out anyway.

The critical thing to me is, whether or not the behavior was a manifestation of his disability, because that determines whether or not everything else is a violation.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

Let's say you are right about notice on the 16th. So what if when you finally held the meeting you made an improper call on the manifestation. It's still a violation.

It would be different if school was all summer. Then we are talking about a summer-long violation. But we are just talking about four or five days.

MR. HOPPE: I'm trying to do that.

But I felt there were procedural problems as well as –

HEARING OFFICER BANKS: Well, the testimony – the testimony was 180 degrees apart on that score. The father says he gave it to my son; my son never gave it to me. He talked to me on the phone, but they didn't tell me there was going to be a hearing. They didn't tell me he was being suspended. In fact, I could have sent him back to school the next day if I wanted to.

MR. HOPPE: But what I would point out to you is that that testimony indicates a couple of different thing.

The parent is complaining here

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-114

(Inaudible) number one.

Number two, I think the parent's credibility is called into question quite seriously by the advocate's testimony that she had conversations with him, when his testimony clearly stated he heard absolutely nothing all summer long about this.

HEARING OFFICER BANKS: No, he said he never – I think the question was whether or not he heard from the school. And that's what he said. He said, no, he did not hear anything from the school.

MR. HOPPE: No, I think the question was that he heard nothing at all about this.

HEARING OFFICER BANKS: The question was, did you hear from the school, and he said no.

MR. HOPPE: I believe my question was did he hear anything about the disciplinary procedures. Irrespective I believe (Inaudible) makes no mention whatsoever of hearing from the advocate about this issue. In fact he did.

I think that goes to the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433              WASHINGTON, D.C. 20005-3701              (202) 234-4433

T-115

credibility of his testimony.

HEARING OFFICER BANKS: But the
parent's advocate that the earliest she got
that this was anything other than a meeting
to update the IEP, that she didn't even know
it was a manifestation meeting until she
talked to special ed coordinator on 9/2 I
believe.

MR. HOPPE: You heard the - you've
seen what the notice looks like.  It's in
the documents we've submitted.

HEARING OFFICER BANKS: Which one?
I don't see the notice that invited Ms.
Gambale to a meeting on July 12th.  Where is
it?

MR. HOPPE: No, I'm talking about
that notice.

HEARING OFFICER BANKS: Oh you're
talking about the one on the 16th?

MR. HOPPE: That's correct, that
they were aware of, and that therefore -

HEARING OFFICER BANKS: Wait a
minute.  There's been no testimony that Ms.
Gambale got the notice on June 16th.  You
said that went to the father and to the son.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-116

There was subsequent testimony by
Ms. Cochran that she faxed and mailed the
notice to Ms. Gambale for July 12th and 13th.
That's the one that Ms. Moody offered
testimony on.  That's the one I asked you if
that was in the record so I could see it.
Because Ms. Moody testified that that notice
gave her no indication that the meeting she
was being invited to was anything more than
a meeting to update the MDT.  And that it
was not until September 2nd that she realized
it was a manifestation meeting, and even
then she didn't realize she was coming to a
meeting that petitioner was being expelled.

Did I misstate the fact?

VOICE: No.

VOICE: Yes.

HEARING OFFICER BANKS: Okay, how
did I misstate the fact?

VOICE: A letter here that was
faxed to her.

HEARING OFFICER BANKS: I don't
see that in the record.

VOICE: It's not in the record.

HEARING OFFICER BANKS: That's

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-117

what I asked.  Go ahead.

Let me see it.  That looks like a letter of invitation to an MDT meeting.

Okay, this one has manifestation determination box checked.  But it's not in the record.

Let me ask this: Is there a fax confirmation sheet associated with that document?

VOICE: I do not have one for the latter dated 7/2/04.

HEARING OFFICER BANKS: That's all right.

Again, I'm sorry, this is somewhat of a diversion, as I said before, because of when this occurred, at the end of the school year, it carries less weight than if there was school all summer.

If there was a procedural problem that caused him to miss school from June 16th through August 30th, that would be a huge problem.  But because of when this occurred, although it's a problem it's not a big problem.

The bigger question in my mind is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-118

the determination as to whether or not the behavior was a manifestation of his disability.  And as to that, had this problem been solved, had the meetings occurred in the summer, he could have started somewhere on September 1st or August 30th, or whatever, and we wouldn't be talking about comp ed if there were a violation.

But I don't want to spend too much time on this.  To me the big issue is whether or not the proper determination was made with respect to manifestation of his disability.

Go ahead, Mr. Hoppe.

MR. HOPPE: I think the statute with regard to determination of manifestation requires, and it's written as a double negative, but qualified personnel may determine that the behavior of the child is not a manifestation – not determine that it was, determine that it was not – only if the IEP and other qualified personnel determines the behavior is subject to disciplinary action.

In terms of him lighting a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-119

firecracker, all relevant information
included, evaluation, diagnostic results,
including other relevant information
supplied by the parents and the child well
the parents of the child wanted a
determination as to whether or not this
manifestation was made, the parent or the
child was there.  As was Ms. Shannon Toppen,
who had all the - collected all the
information and has attempted (Inaudible)
observations of the child.  Well of course
all the people who observed the child and
the conduct were at that hearing.  And you
have the details of the (Inaudible).

It was then determined that the
relationship to the behavior subject to
disciplinary action (Inaudible) were
appropriate to special education services
(Inaudible) behavior information strategy
for providing consistent with the child's
IEP and placement.

Now, here is where there is a
disconnect, and here is where I believe that
the Court may be misled by what's happening
here.  I think as far as appropriateness, I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         (202) 234-4433

T-120

believe what they were talking about is whether or not it was appropriate for him to continue to be educated at Barbara Jordan Public Charter School.

Essentially in the minds of the people considering the term, appropriateness, it was not considered in conjunction with this statute, but rather whether or not it was appropriate to expel him from the school at that point. And that's what the statement there is, whether it was appropriate for him to stay at Barbara Jordan.

It appears otherwise, one would think and argue that this statute must then be interpreted that any emotionally disturbed child can engage in virtually any behavior whatsoever, and because it's related to his emotional disturbance, that the placement is not appropriate, and therefore, he can't be expelled no matter what he does.

HEARING OFFICER BANKS: You are confusing two things. The question is whether or not the behavior is a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-121

manifestation of his disability.  In which case certain things are triggered by the regulations.

I don't think that precludes the school from expelling him.  But it still has an obligation if it's determined that the behavior is a manifestation of his disability.

MR. HOPPE: It says that you have to find –

HEARING OFFICER BANKS: Here is my problem.  We have a problem who is admittedly ED, right?

MR. HOPPE: Right.

HEARING OFFICER BANKS: And the school says that the behavior standards for ED students is the same as for non-ED students.  And with respect to this particular child, his IEP indicates, as of September 24th, 2003, that he has an anger problem; he's got a frustration problem; he loses his temper, and he needs work with coping mechanisms.

So I need some explanation as to why this behavior is not a manifestation of

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-122

his disability.

MR. HOPPE: Well, as far as the statute is concerned, if you are looking for it according to the statute.

HEARING OFFICER BANKS: You are the LEA. The LEA has a burden of proof here. The question of whether or not the LEA made a proper determination that the hearing on September 9th, made a proper determination that his behavior was not a manifestation of his disability.

What I heard testimony here today was that the decision was made because he violated school policy, and that school policy with respect to behavior is blind as to classification.

I also heard no testimony that his IEP was considered other than as IBP (phonetic) in determining that his manifestation – that the behavior was not a manifestation.

Ms. Toppen testified, she read from the IEP, and the IEP clearly indicates that this child has some serious problems with respect to behavior, coping, anger,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-123

frustration, temper.

So to say that what he did on the 16th wasn't found in his IEP, therefore was not a manifestation, to me seems to beg the question.

MR. HOPPE: I'm not suggesting simply that the IDP (Inaudible) every conceivable thing he could do that would be outside the norms.

HEARING OFFICER BANKS: This is a child who is – I'm going to read the IDP.  I haven't made a determination.  I haven't read the IDP.  I do know he's ED.  I do know that his IEP indicates he's got these problems.  I do know that you have the burden of proof.  I will look at the records.

But I will say that right now I'm uncomfortable with the explanation that this was not a manifestation of his disability when the school psychologist says it was, and I've heard no logical explanation from the school why it wasn't.

Now maybe what I heard will become clear when I read the IDP.  But for the school to take issue with the school

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

T-124

psychologist when the child is ED, when the IEP indicates he is a serious behavior problem, I'll just have to see when I look at the record.

MR. HOPPE: I thought you wanted to talk about the applicability of the statute. It's a balancing factor between these factors –

HEARING OFFICER BANKS: Okay, what do I balance on the other side?

MR. HOPPE: If I may, I think I might be able to tell if I can conclude that.

HEARING OFFICER BANKS: I'm the one that has to make the determination, so if I think you are blowing smoke, I'm going to cut you off.

MR. HOPPE: – blowing smoke.

HEARING OFFICER BANKS: I told you what my problem was. I told you what my problem was. So now if you can help me with that problem, fine. Or else we can terminate the hearing.

MR. HOPPE: I think the statute sets up a balance.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-125

HEARING OFFICER BANKS: I'm talking about the facts of this particular case.

MR. HOPPE: That's correct.

HEARING OFFICER BANKS: Okay, give me the balance.

MR. HOPPE: The balance is the behavior subject to disciplinary actions versus the other factors such as the IEP.

Whether that behavior is beyond the scope of that IEP, essentially whether that behavior constitutes a manifestation (Inaudible).

HEARING OFFICER BANKS: – the facts of this case today.

MR. HOPPE: Right.  The facts we have, as described by Mr. Williams, are that a fire works was set off, inside of a desk and in the bathroom.  They were not – there was nothing to indicate they were done in reaction to any other incident or any provocation or anything else that would have caused him to do that.  It was simply a frivolous act.  There is no evidence to show that he was reacting to anything, that this

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

T-126

has anything to do with his disability whatsoever, other than it's just a frivolous prank that he decided at the end of the year to set off some fireworks in the bathroom and at his desk.

HEARING OFFICER BANKS: So this is just a frivolous prank?

MR. HOPPE: What I'm saying is, it also happens to be an extremely dangerous prank, and something that the school cannot condone, and therefore has to expel him for doing so.

But there is no indication that this — that the (Inaudible) with his emotional disturbance, that it was done out of anger, that it was out of a behavioral problem at all.

HEARING OFFICER BANKS: So I understand, the record indicates that two weeks before that he tried to commit suicide?

MR. HOPPE: No, there is no indication that he tried to commit suicide, no indication that he attempted to commit suicide, though he wrote in his journal, but

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

T-127

he did not attempt to commit suicide.

   HEARING OFFICER BANKS: But he talked about suicide in his journal.

   MR. HOPPE: Well, he made a suicidal reference.  In fact it's on one of our exhibits, Your Honor.  It says, kill me, kill me, kill me, kill me, kill me, I love Rob, kill me, I hate my father.  It doesn't say I'm going to kill myself.  Referring to suicide is, I think, is a matter of interpretation, that it's not necessarily saying I want to die or that I want to kill myself.  It's not what it says.

   HEARING OFFICER BANKS: Okay, I haven't looked at it.  I'm just asking.

   MR. HOPPE: Thank you.

   HEARING OFFICER BANKS: Thank you.

   Okay, so is that 300.523 that we are arguing about?

   MS. GAMBALE: That was.  I know that you are familiar with the statute, and you can read it and interpret it.

   HEARING OFFICER BANKS: I just want to make sure it was 523.

   MS. GAMBALE: It was 523.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433   WASHINGTON, D.C.  20005-3701   (202) 234-4433

HEARING OFFICER BANKS: Okay.

Anything from either side?  Thank

you very much.

                    (Whereupon the hearing
                    in the above-entitled
                    matter was adjourned)

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

**T-129**