# District of Columbia Public Schools
### Office of Management Services
Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

## Confidential

| | | |
|---|---|---|
| PHILLIP LIVERPOOL, STUDENT | ) | |
| | ) | |
| Date of Birth: November 28, 1991 | ) | |
| | ) | |
| Petitioner, | ) | Hearing Date: October 1, 2004 |
| | ) | |
| v. | ) | Request for Hearing: August 31, 2004 |
| | ) | |
| THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS | ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| BARBARA JORDAN P.C.S. | ) | |
| | ) | Held at: 825 North Capitol Street, N.E. |
| Respondents. | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Student Attending: | ) | |
| MacFarland M.S. | ) | |

### HEARING OFFICER'S DECISION

**Parents:**    Mr. Phillip Brown, Father
734 Marietta Place, N.W.
Washington, D.C. 20011

**Counsel for Petitioner:**    Roberta L. Gambale, Esquire
James E. Brown & Associates
1220 L Street, N.W.; Suite 700
Washington, D.C. 20005
(202) 742-2000, x2021; Fax: (202)742-2098

HOD-1

**Counsel for DCPS:** Linda M. Smalls, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

**Counsel for BJPCS:** Jon A. Hoppe, Esquire
Hafey & Hoppe, LLC
11821 Parklawn Drive; #320
Rockville, Maryland 20852
(301) 816-0953; Fax: (301) 816-3260

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | Phillip Liverpool |
| Child's Parent(s) (specific relationship) | Phillip Brown, Father |
| Child/Parent's Representative | Roberta L. Gambale, Esquire |
| School System's Representatives | Linda M. Smalls, Esquire for DCPS<br>Jon A. Hoppe, Esquire for BJPCS |
| Special Education Coordinator | Samantha S. Toppin, BJPCS |
| Principal | Richard Rogers, Principal, BJPCS<br>Alan Williams, Interim Dean of Students, BJPCS |
| Educational Advocate | Michelle Moody, James E. Brown & Assoc. |

2

## Jurisdiction

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Act ("IDEA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

## Introduction

Petitioner is a twelve year-old student attending MacFarland Middle School ("MacFarland"). On August 31, 2004, Petitioner filed a *Request for Hearing* ("*Request*" or "*Petition*") alleging that the Barbara Jordan Pubic Charter School ("BJPCS") and the District of Columbia Public Schools ("DCPS") had violated IDEA. Specifically, Petitioner alleged that BJPCS (1) had not allowed Petitioner to re-enroll for the 2004-2005 school year and, thereby, unilaterally changed his placement, and (2) failed to follow appropriate procedures in expelling Petitioner. The due process hearing was convened on October 1, 2004. The parties' Five Day Disclosure Notices were admitted into evidence. DCPS moved to be dismissed as a party due to BJPCS' status as a local education agency ("LEA").[1] Neither of the other parties opposed DCPS' motion and it was granted.

## Witnesses for BJPCS

Richard Rogers, Principal, BJPCS
Alan Williams, Interim Dean of Students, BJPCS
Samantha S. Toppin, Special Education Coordinator, BJPCS

## Witnesses for Petitioner

Petitioner's Father
Michelle Moody, Educational Advocate, James E. Brown & Associates

## Findings of Fact

1. Petitioner is a twelve year-old student attending MacFarland.[2]

2. On September 24, 2003, BJPCS convened a Multidisciplinary Team ("MDT")/Individualized Education Program ("IEP") meeting. The MDT classified

---

[1] 34 CFR § 300.18.
[2] Representation of Petitioner's counsel.

Petitioner as emotionally disturbed ("ED") and prescribed 15 hours per week of specialized instruction and one hour per week of psychological counseling.[3]

3. On June 1, 2004, BJPCS contacted the D.C. Health Crisis Intervention Unit, because Petitioner "wrote a message threatening to kill himself."[4]

4. On June 16, 2004, Petitioner was involved in an incident in which he and another student lit firecrackers in the classroom. Petitioner was suspended immediately and barred from returning to school until the convening of a manifestation meeting. The hearing was scheduled for June 21, 2004.[5]

5. The manifestation meeting on June 21, 2004 was postponed because Petitioner's father did not appear.[6]

6. BJPCS sent a notice to Petitioner's counsel proposing that the manifestation meeting be held on July 12 or July 13, 2004.[7] Petitioner's educational advocate faxed a response indicating that she and Petitioner's father were unavailable on those dates, but proposed three dates in August.[8]

7. BJPCS prevented Petitioner from enrolling for the 2004-2005 school year on August 30, 2004, because no manifestation meeting had been held.[9]

8. On September 7, 2004, BJPCS convened a manifestation meeting. DCPS had no representative at the meeting. Early in the meeting, Mr. Rogers expressed his opinion that Petitioner should be expelled because of escalating behavior problems and the incident on June 16th.[10] Mr. Heaney, BJPCS' Executive Director, disagreed with Mr. Rogers' proposal to expel Petitioner.[11] The school psychologist stated that Petitioner required a more restrictive environment, and that "there is a direct correlation between [Petitioner's] behavior and his disability."[12] Mr. Rogers reiterated his insistence that Petitioner be expelled.[13] The MDT concluded that "the behavior in question was not a manifestation of his disability," recommended that Petitioner be placed in a private day school, and recommended that Petitioner be expelled.[14]

9. The behavior standards and expectations at BJPCS are the same for non-disabled and emotionally disturbed students.[15]

---

[3] Petitioner's Exhibit ("P.Exh.") No. 5 at 1.
[4] BJPCS Exh. No. 1.
[5] BJPCS Exh. Nos. 3, 4, and 5; Testimony of Mr. Williams.
[6] Testimony of Mr. Rogers.
[7] Testimony of Ms. Toppin.
[8] P.Exh. No. 7.
[9] Testimony of Mr. Rogers.
[10] P.Exh. No. 8 at 3.
[11] *Id.* at 4.
[12] *Id.* at 6.
[13] *Id.*
[14] *Id.* at 8.
[15] Testimony of Mr. Rogers.

4

10.     Petitioner enrolled at MacFarland on September 15, 2004. His enrollment was delayed because BJPCS did not forward a complete set of Petitioner's educational records confirming that Petitioner had received necessary vaccinations.[16]

**Conclusions of Law**

1. BJPCS has failed to beet its burden of proving that the behavior leading to Petitioner's expulsion was not a manifestation of his disability. Early in the MDT meeting on September 7th, Mr. Rogers urged that Petitioner be expelled. The school's Executive Director disagreed. The school psychologist stated categorically that Petitioner's behavior was a manifestation of his behavior, with which Petitioner's representatives agreed. Nevertheless, the MDT "concluded" that the behavior was not a manifestation of Petitioner's behavior and ratified Mr. Rogers' insistence upon expulsion. The MDT gave no reason for its rejection of the school psychologist's opinion that Petitioner's behavior was a manifestation of his behavior. The MDT Meeting Notes do not explain how this "conclusion" was reached despite contrary viewpoints expressed by Petitioner's representatives, BJPCS' Executive Director, and BJPCS' school psychologist. The notes reflect that a "majority" of the members of the MDT concurred with the final conclusions and recommendations. Six representatives of BJPCS were at the meeting, while Petitioner was represented by three individuals. The hearing officer does not believe that an LEA can justify otherwise inexplicable conclusions merely on the basis of outnumbering a petitioner's representatives at an MDT meeting.

At the hearing, BJPCS' witnesses offered no credible explanation for rejecting their own psychologist's opinion. Mr. Rogers' explanation was that the behaviors were unrelated to those described in Petitioner's Intervention Behavior Plan ("IBP"). However, a review of the record reveals that BJPCS never prepared an independent IBP for Petitioner. The typed IBP in Petitioner's September 24, 2003 IEP, prepared by BJPCS, is identical to the hand-written IBP prepared by DCPS on July 31, 2003. Moreover, BJPCS' IBP carries the date of DCPS' IBP, July 31, 2003. BJPCS was sufficiently concerned about a suicide threat on June 1, 2004 that it summoned the D.C. Health Crisis Intervention Unit. However, it did not convene an MDT to reconsider Petitioner's IBP. Additionally, Mr. Rogers admitted that his decision to expel Petitioner was based on a disciplinary policy that does not differentiate between non-disabled and emotionally disturbed students. Thus, BJPCS effectively rejects the suggestion that a student whose behavior manifests a disability should be viewed and treated differently than a non-disabled student.

BJPCS classified Petitioner as ED and prescribed psychological counseling in September 2003. On June 1, 2004 BJPCS concluded that Petitioner had made a suicide threat. According to Mr. Rogers, Petitioner had exhibited "escalating behaviors" leading up to the incident on June 16th. Therefore, BJPCS certainly was aware that Petitioner was a child whose emotional condition was affecting his performance in school. Nevertheless, BJPCS took no steps to modify Petitioner's IBP or to propose some behavior

---

[16] Testimony of Petitioner's father.

modification program. In the view of this hearing officer, Petitioner's decision to set off firecrackers in a classroom where immediate detection was inescapable, constitutes bizarre behavior. Upon BJPCS' school psychologist's opinion that the behavior was a product of Petition emotional disturbance, BJPCS has the burden of proving that something in its records refutes that professional opinion. It offered no cognizable explanation. Clearly, Mr. Rogers was motivated by an overwhelming desire to sever the relationship with Petitioner. Mr. Rogers imposed his will on the MDT despite the MDT's obligation to make a determination based on standards imposed by IDEA.

Therefore, pursuant to 34 CFR Section 300.525 (b), the hearing officer concludes that BJPCS violated the provisions of 34 CFR Section 300.523. Section 300.523(c) requires a series of steps and analyses that BJPCS bypassed in its rush to expel Petitioner. BJPCS also violated 34 CFR Section 300.520(b), which requires it to address Petitioner's behavioral problems in cases involving suspensions and expulsions.

2. In light of DCPS' violation of IDEA, BJPCS is liable for compensatory education services for services Petitioner would have received but for the violation.[17] The MDT concluded that Petitioner be placed in a private day school, but took no steps to implement this recommendation. While the hearing officer makes no finding on the validity of the proposed setting, Petitioner is entitled to compensatory education services for BJPCS' failure to provide an appropriate placement from the beginning of the 2004-2005 school year.

3. Petitioner is the prevailing party in this proceeding.

### ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, the testimony presented at the hearing, and the representations of the parties' counsel at the hearing, this 21st day of October 2004, it is hereby

**ORDERED,** that as to DCPS, the Petition is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED,** that on or before November 12, 2004, BJPCS shall conduct a functional behavior assessment of Petitioner and convene an MDT meeting to which DCPS shall be invited as the State Educational Agency ("SEA"). The MDT shall develop an IBP, update the IEP, and discuss placement alternatives.

**IT IS FURTHER ORDERED,** that DCPS and BJPCS shall afford Petitioner's parent an opportunity to participate in any meeting in which Petitioner's placement is discussed or determined. The DCPS representative shall advise Petitioner's parent of the

---

[17] *Harris v. District of Columbia,* Civ. Action No. 91-1660, 1992 U.S.Dist. LEXIS 11831 at 8-11. (D.D.C. August 7, 1992).

advantages and disadvantages for Petitioner with respect to each school that is discussed, including any schools proposed by the parent. DCPS shall provide Petitioner's parent an explanation for the placement the DCPS proposes, and the reasons for the proposal shall be provided in the Meeting Notes. DCPS shall issue a Prior Notice within five school days of the MDT/IEP meeting if it places Petitioner in a public facility; if it places Petitioner in a private facility, DCPS shall issue a Prior Notice within 30 days of the MDT/IEP meeting.

**IT IS FURTHER ORDERED,** that BJPCS will coordinate scheduling the functional behavior assessment and the MDT meeting, and other meeting in which Petitioner's placement is discussed or determined, with Petitioner's counsel, Roberta Gambale, Esquire (202) 742-2000, x2021.

**IT IS FURTHER ORDERED,** that Petitioner is authorized to obtain one hour of independent tutoring services in subjects for which he receives specialized instruction, in accordance with 5 DCMR Section 3027.5, for each school day beginning on September 1, 2004 and ending on the day Petitioner enrolls in an uncontested placement pursuant to the MDT meeting ordered above.

**IT IS FURTHER ORDERED,** that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS or BJPCS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

This is the final administrative decision in this proceeding. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy, in accordance with 20 U.S.C. Section 1415(i)(2)(A) within thirty days of the entry of the Hearing Officer's Decision.[18]

                                                   _____
                                                   Terry Michael Banks
                                                   Hearing Officer

Date: October 21, 2004

Issued: _____

Copies to:

Roberta L. Gambale, Esquire
James E. Brown & Associates
1220 L Street, N.W.; Suite 700
Washington, D.C. 20005
(202) 742-2000, x2021; Fax: (202)742-2098

Linda M. Smalls, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

Jon A. Hoppe, Esquire
Hafey & Hoppe, LLC
11821 Parklawn Drive; #320
Rockville, Maryland 20852
(301) 816-0953; Fax: (301) 816-3260

---

[18] See *Amman v. Town of Stow*, 991 F.2d 929, 931(1st Cir. 1993) (since the IDEA does not set a time limit for lawsuits brought under its terms, the district court must "borrow" the most analogous statute of limitations under state law); *Spiegler v. District of Columbia*, 866 F.2d 461, 463-64 (D.C. Cir. 1989)(borrowing a 30-day limitations period for review of agency orders and applying it to an appeal from a decision under the predecessor to IDEA). In the District of Columbia, the Rules of the Board of Education do not prescribe a time limit for bringing the civil action authorized by the IDEA and the Board's Regulations, 5 D.C.M.R. Section 3032.5. The D.C. Administrative Procedures Act defers to the District of Columbia Court of Appeals to set the limitation period for filing an appeal from a final agency action. D.C. Code §2-510(a). Under the Court's rules, a petition for review of an agency order must be filed within thirty days. D.C. Ct. App. Rule 15(a).

HOD-8